### LOSSING v. HUGHES, Criminal Dist. Atty., et al. (No. 8856.)

(Court of Civil Appeals of Texas. Dallas July 1, 1922.)

**1. Constitutional law ⟜81—Police power restricted only by limitations in state or federal Constitutions.**

The police power is confined only by the limitations and restrictions expressed or implied in constitutional inhibitions, but a statute enacted in the exercise of such power must conform to every right granted or secured to citizens either by the Constitution of the United States or of the state.

**2. Constitutional law ⟜230(1), 287—Licenses ⟜7(2)—Motor Vehicle Law held invalid as discriminatory and as denying equal protection and due process of law.**

Acts 37th Leg. (1921) 1st Called Sess. c. 52, requiring license fees and registration of motor trucks and tractors used by all private owners except farmers, and prohibiting commercial motor vehicles with a greater capacity than 8,000 pounds to be used by any one except for agricultural purposes, held discriminatory as not based upon a proper classification, and repugnant to Const. U. S. Amend. 14, § 1, and Const. Tex. art. 1, § 19, guaranteeing the equal protection of the laws and the due course of the law of the land.

**3. Injunction ⟜118(4)—Petition to restrain criminal proceedings under Motor Vehicle Law held sufficient.**

In a suit to restrain the district attorney from prosecuting petitioner for violation of Acts 37th Leg. (1921) 1st Called Sess. c. 52, regulating the use and capacity of motor vehicles, petition held sufficient to show impairment of property rights and a multiplicity of suits as grounds for injunction.

**4. Injunction ⟜105(2)—Criminal prosecution under void law destroying property and its use may be enjoined.**

Subject to very few exceptions, a court of equity will not interfere by injunction with criminal proceedings, but one exception to such rule is that a criminal prosecution under a void law which destroys property and its use and enjoyment will be enjoined by a court of equity.

**5. Injunction ⟜105(2)—Criminal prosecutions under void law may be restrained to avoid multiplicity of suits.**

Equity may enjoin criminal proceedings under a void law to avoid a multiplicity of suits.

**6. States ⟜191(2) — When suit to restrain criminal prosecution is a suit against state, defined.**

When a state officer is especially charged with enforcing a law alleged to be unconstitutional, a specific duty being imposed upon him in the very terms of the law, and it is alleged that he is about to commit a personal wrong against plaintiff in enforcing it, the courts have jurisdiction; but, if the officer acts strictly within the scope of duty imposed upon him generally by the Constitution and laws of the state, a suit against him is a suit against the state, and the courts have no jurisdiction.

**7. States ⟜191(2)—Suit to enjoin district attorney from enforcing Motor Vehicle Law held suit against state.**

A suit to enjoin criminal prosecutions for violating Acts 37th Leg. (1921) 1st Called Sess. c. 52, relating to motor vehicles, brought against the criminal district attorney, is a suit against the state, without the jurisdiction of the court; the district attorney bearing no particular official relation to the statute sought to be enforced.

**8. Courts ⟜89—Court of Criminal Appeals not bound by decisions of civil courts construing criminal statutes.**

The Court of Criminal Appeals is not bound by the decisions of civil courts construing criminal statutes, and its decision of a criminal case is final.

Appeal from District Court, Dallas County; Royall R. Watkins, Special Judge.

Suit by G. H. Lossing against Maury Hughes, Criminal District Attorney of Dallas County, and others, for a temporary writ of injunction. From an order denying the application and dismissing the suit on general demurrer, petitioner appeals. Affirmed.

Joe Utay and Currie McCutcheon, both of Dallas, for appellant.

Will McCraw, M. T. Lively, and O. F. Wencker, all of Dallas, for appellees.

HAMILTON, J. This is an appeal from an order of the court below refusing to grant appellant's application for a temporary writ of injunction restraining appellees from prosecuting appellant and his agents and others alleged to be of the same class and situated in a similar situation to that of appellant, the suit being what is termed a "class suit." Appellees interposed a general demurrer to the petition, which was sustained, and the suit was dismissed.

The allegations of the petition may be epitomized to the following effect:

It was alleged that appellant was engaged in the gravel business, using four motor

trucks, each of five tons capacity, in hauling gravel from gravel pits located six miles east of what is known as the Kaufman road in Dallas county, which road is alleged to be one of the cardinal highways leading into the city of Dallas and constantly used by the public. It was alleged that when chapter 52 ·of the General Laws of the First and Second Called Sessions of the Thirty-Seventh Legis-lature became effective, appellant had an established and lucrative business of conveying gravel from gravel pits and delivering it in the city of Dallas to customers; that after the enactment of said law he bought no additional trucks of the type the use of which was prohibited by said enactment on the public roads.

Appellant alleged that the four trucks then possessed by him had a net weight of 9,000 pounds each, and that he customarily loaded them with enough gravel to make a total weight not exceeding 26,000 pounds; that the back wheels were equipped with solid tires fourteen inches in diameter and the front wheels were equipped with solid tires six inches in diameter; that according to said ·enactment he would be entitled to transport 26,000 pounds without violating it, such load being upon the basis of 650 pounds weight per inch of tire width, and that upon such basis he would not violate the terms of the enactment unless he carried a 10 per cent. ·excess, the total permissible weight being 28,000 pounds under that portion of the statute permitting him to carry 650 pounds to one inch of tire. He alleged in detail all the provisions of this enactment comprehended in section 1 thereof, and asserted it to be in contravention of both the federal and state ·Constitutions. The entire enactment constitutes an amendment of section 16 of chapter 190 of the General Laws of the regular session of the Thirty-Fifth Legislature of Texas as amended by amendments to said act of the Thirty-Fifth Legislature intervening between its passage and the enactment ·of the amendment involved in this suit. Vernon's Ann. Civ. St. Supp. 1922, art. 7012½.

The law defines "commercial motor vehi-·cles" to be vehicles "intended, designated or used for the transportation of property." It provides an annual fee for each of such vehicles based upon the net carrying capacity and tire equipment, such license fee applying to vehicles of a minimum net capacity of 2,001 pounds and ascending by ·a graduated scale of charges on such basis to and including those of a net carrying capacity of 10,-·000 pounds. The law prohibits the licensing of any such vehicle whose net carrying capacity is greater than 8,000 pounds, with the provision that the person charged with the care of any certain highway may apply to the highway commission of Texas for permission granting motor vehicles having a greater carrying capacity than that named in the act the right to operate upon such specifically named highway; · and· further providing that the highway commission, after investigation of the strength of the road, may issue to owners of motor vehicles a license authorizing a greater load than that named in the act.

The law also provides a basis for an annual license fee for trailers, semitrailers, for tractors and for motor busses.

Section 16 contains a provision that trucks or tractors used exclusively for ·agricultural purposes, as well as fire engines, road rollers, steam shovels, and other road building and agricultural machinery, shall not be required to be registered; provided that nothing in this section shall be construed to exempt from the act motor vehicles, trailers, semitrailers, and tractors used for road building purposes, if privately owned. Section 16 also provides that trucks · used · exclusively for agricultural purposes shall be registered by horse power as is provided for the registering of automobiles under the original act. These discriminations in favor of trucks and motor vehicles used exclusively for agricultural purposes are alleged to render the act void and in violation of the federal and state Constitutions, on the ground that it is an unreasonable class distinction and denies appellant and those similarly situated the equal protection of the law; and the law was alleged to contain this same infirmity for the further reason that it prohibits the local highway officers in the respective counties of Texas from issuing a license to a commercial motor vehicle whose net carrying capacity is greater than 8,000 pounds; no such inhibition being made as to trucks used in agricultural pursuits.

, Appellant alleged that · those vehicles defined· as commercial motor vehicles are of the same engine construction and driven by the same power and in the same manner as those used for agricultural purposes, and that the latter at times carry loads of greater weight than those which appellant is permitted by the law to carry, and operate at a greater rate of speed than the maximum speed limit provided for commercial motor vehicles in section 3 of this act; and he alleged that vehicles used for agricultural purposes, permitted by the act to operate at a greater rate of speed and to carry a heavier load than permitted for the vehicles operated by appellant in his business, inflict greater injuries on the road than was inflicted by the vehicles which appellant had heretofore operated for the purpose of hauling gravel, and the operation of which was inhibited by the law.

Appellant alleged that the law, in denying him the right to operate his trucks because of their carrying capacity being greater than the maximum provided for commercial motor vehicles, rendered the four trucks described in the petition a total loss to him, and made his gravel pit a 50 per cent. loss to him, He

alleged that the trucks cost $7,132 each, and that the gravel pit had been reduced in value at least the sum of $50,000; that the business of digging gravel and bringing it into the city of Dallas was necessary for the construction of streets and sidewalks and the general improvement and growth of the city, and for the purpose of building roads in Dallas county; and that it was a lawful and an honorable vocation.

Appellant alleged that since about the 1st day of January, 1922, he has been constantly threatened with arrest and prosecution; that on several occasions he and his drivers had been arrested, charged with violating the several sections of the law complained of in the petition, and that at this time there are pending against him several cases charging him and his agents with operating the trucks without licenses, and without a seal and name plate, and with overloading his trucks; that a number of peace officers of Dallas have threatened to arrest him every day for operating his trucks and for not having a license, and charging him with violating every provision and section of the enactment. He alleged that constantly since his last license expired on December 31, 1921, he has offered to take out all licenses and pay all license fees that might be required of him, and that he has undertaken to secure a special license to operate his trucks in compliance with that provision of the act authorizing the highway commission, after a hearing and investigation as to the structure and capacity of any specific road, to issue a special license; and he alleged that all of this has been denied him. He further alleged that he had offered to enter into bond in any amount that might be required by the highway department or the tax collector, and has tendered the maximum license fee for his trucks, all of which has been refused, and he pleads the tender of such bond and license fees in this case.

He alleged that during about one-third of the time since January 1, 1922, his trucks have been idle on account of prosecutions, and threatened prosecutions, from the district attorney and his deputies; that the peace officers who are interested in the enforcement of the law are vindictive towards him. He alleged that petitions had been circulated along and near the road among people with the object of having him prosecuted for violating the law; that a citizens' committee had demanded filing of complaints against him every day that he operated his trucks, and against every driver of his trucks every day that such drivers operated them, and that such cases be immediately tried. He further alleged that this would involve some 400 criminal prosecutions against him and his drivers for alleged violation of the statute; and, in the same connection, he alleged that he had large contracts for the delivery of gravel in the city of Dallas, and that for every day he failed to use his trucks in the future on account of such prosecutions, or threatened prosecutions, he would lose $100.

He further alleged that there were pending in the Court of Criminal Appeals of Texas two original habeas corpus applications which had been granted and argument heard on them several weeks before the petition in this case was filed. He alleged that there were about 5,000 owners of trucks in the state of Texas, which trucks were used for the same purpose as those to which appellant subjected his trucks; that they were of the same description as the four trucks for which he had been refused licenses, and the license fee for the use of which he had tendered and acceptance of which had been declined, and that such owners have from 1 driver to 28 drivers of trucks, all of whom had been refused license, and that many of them had been arrested charged with violating the enactment; and he alleged that he brought this suit for all of the class of truck owners and commercial vehicles situated similarly to himself. He named, specifically, 8 operators of trucks of the same classification and capacity as those of his in Dallas county, and alleged that each of them, and their drivers, had either been arrested upon the same charges as those filed against him or had been threatened with criminal prosecution upon such charges, and that he and other operators of trucks had been deterred by such prosecutions, and threatened prosecutions, from using their trucks, as a result of which they had sustained monetary loss, and, in the future, would lose thousands of dollars on account of such prosecutions and threatened prosecutions. He alleged that there were more than 1,000 other users of trucks of the same class, kind, and character as those of his in Dallas county who were affected as he was by the operation of the law; that they were engaged in various kinds of business and had been refused licenses as he had; that the owners and operators of such trucks had been arrested and threatened with arrest, and their business impaired, and that all of them had sustained heavy loss on account of such prosecutions and threatened prosecutions. In addition to the allegation that he, himself, had been arrested for operating his trucks, appellant also alleged that four of his drivers, whom he named in the petition, had been arrested and threatened with arrest. He alleged that he had attempted to effect an agreement with the criminal district attorney of Dallas county and his deputies to the effect that prosecutions would be held in abeyance until the two aforesaid habeas corpus applications pending in the Court of Criminal Appeals might be decided and disposed of, but that appellees had refused to accede to his proposition and had declined to enter into such agreement. He made allegations of threats of violence by citizens along the road which had

been used by him, and also alleged that the trial of the cases pending and threatened against him would consume many weeks of time and entail an enormous expense if they were defended in the criminal courts. The prayer of the petition is that Maury Hughes, criminal district attorney of Dallas county, Tex., and his deputies, be enjoined from further prosecuting appellant or his agents, or others in the same class and ·similarly affected.

Since appellant seeks relief exclusively against Maury Hughes as criminal district attorney of Dallas county, it is manifest that those portions of the petition which describe threats, acts, and conduct of peace officers and citizens directed against appellant are irrelevant and must be disregarded in the consideration of the case.

The suit being one to enjoin the prosecution of criminal cases, the disposition of it entails a consideration of the following questions:

First. Are those features of the law which prohibit, and provide punishment for, the acts appellant claims he is restrained from doing in the pursuit of his business, valid and constitutional?

Second. If such features of the law are unconstitutional and void, does the petition disclose such an impairment of property rights threatened or being inflicted by reason of prosecutions as to authorize interference by injunction, or do the allegations disclose a situation which would authorize a court of equity to interpose relief by injunction to prevent a multiplicity of suits?

Third. Conceding the law to be unconstitutional, and that the allegations disclose acts on the part of the appellee constituting an impairment of appellant's property rights, and also imposing upon him the burden of a multiplicity of suits, still is this proceeding one against the state of Texas rather than against an individual officer in the sense that the suit cannot be maintained on the ground that it is one against the state?

The enactment as disclosed by the objects sought to be attained is manifestly a wholesome attempt to exercise the police powers of the state for the purpose of maintaining and preserving public highways constructed at great cost and subjected to the most vital uses.

[1] The authority of the state through exercise of its police power to protect the public health, the public morals, and the public safety and convenience, is not to be questioned except for invasion of rights secured by fundamental law. The police power, of course, is broad and large, and is confined only by the limitations and restrictions expressed or implied in constitutional inhibitions. However, a statute enacted in the exercise of this power, or in the exercise of any legislative power, must conform to every right granted or secured to citizens either by the Constitution of the United States or of the state of Texas. Although trite the expression may seem, it may be repeated that these instruments are the supreme law of the land, to which every statutory enactment conflicting with them must yield.

[2] The statute under consideration imposes upon all private owners and users of motor trucks and tractors, except those who operate them for agricultural purposes, the requirements, burdens, and charges therein provided; only farmers are exempt. They are not required to conform to the registration provisions; they pay none of the registration fees the law imposes; they are exempt from the restrictions as to the maximum carrying capacity of trucks to be used upon public highways; they are not subject to the limitations as to rate of speed at which motor vehicles may be operated. A motor vehicle used for agricultural purposes may be of any size, without limitation, and inflict any damages whatever upon the roads incident to its passage over them, and yet its owner and user is free from every requirement and restriction the law lays upon all others. It may be driven at any rate of speed so far as this particular law is concerned, but others must conform to the speed rate the law designates. The commercial motor vehicle, the carrying capacity of which exceeds 8,000 pounds, is excluded from the highways under penalty of the law. Its owner and driver become law violators and subject themselves to criminal prosecution when they operate upon public highways. The same vehicle may be operated for agricultural purposes at the same time upon any public road with impunity. Surely a law which operates to such effect and contains such discriminations is class legislation. We can conceive of no enactment which more clearly falls within that category. We recognize the well-established principle that in the exercise of police power the Legislature may make distinctions based upon classification, provided the classification rests upon a rational difference which necessarily distinguishes all those of particular classes from those of other classes. However, it is vital to the validity of such legislation that such rational basis must exist. The Legislature cannot by its arbitrary fiat create such classification. If in the nature of things there is no rational distinction upon which it is based in relation to the subject-matter of the legislation and the purposes sought to be attained, then the law cannot survive the challenge of the citizen or class of citizens discriminated against. Under such circumstances, a law which works the spoliation of the property of certain citizens and subjects them to an exercise of governmental power which is purely arbitrary, branding them as criminals for committing acts which are lawful when committed by others, is,

we think, clearly and altogether without support in the theory that it affects equally and alike all the individuals of the class to which it pertains. Without indicating any reason for it, the Legislature by the provisions of this law imposes penalties and restrictions upon the property rights which inhere in the ownership and operation of commercial motor vehicles, and exempts motor vehicles used in agricultural pursuits from such penalties and restrictions; and, equally without indicating any reason for it, makes criminal the use of certain motor vehicles for commercial purposes and, at the same time, makes lawful the use of the same vehicles for agricultural purposes upon the same roads. No reason suggests itself to us as a justification of such discriminations. In these respects, as well as in other respects apparent at a glance, the owners and users of commercial motor vehicles are made the victims of capricious discrimination.

The statute denies to the owners and users of commercial motor vehicles the protection, privileges, and immunities which are granted to the users of the same kind of motor vehicles for agricultural purposes. It therefore denies them the equal protection of the laws, which means:

"That no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." Missouri v. Lewis, 101 U. S. 22, 25 L. Ed. 989.

It means that there shall be no arbitrary deprivation of life or liberty, "or arbitrary spoliation of property, but that equal protection and security shall be given to all under like circumstances in the enjoyment of their personal and civil rights." Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220. It requires that—

"All persons subject to legislation limited as to the objects to which it is directed, or by the territory within which it is to operate, 'shall be treated alike, under like circumstances and conditions both in the privileges conferred, and in the liabilities imposed.'" Hayes v. Missouri, 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578.

"Due process of law and the equal protection of the laws are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government." Duncan v. Mo., 152 U. S. 377, 14 Sup. Ct. 570, 38 L. Ed. 485.

See, also, Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679.

Numerous other decisions announce the principles contained in the foregoing quoted extracts. Applying them to the provisions of the statute involved in this case such provisions, we think, are manifestly repugnant to section 1 of the Fourteenth Amendment to the Constitution of the United States and to section 19 of article 1 of the Constitution of Texas, which guarantee to citizens the equal protection of the laws and the due course of the law of the land.

[3, 4] The allegations of the uses of trucks in the pursuit of the business of gravel hauling and of the losses incurred by reason of the interference with their uses, together with the allegations of repeated arrests and threatened arrests of appellant and his drivers which we have set out above, we think are sufficient allegations of the impairment of property rights and of the creating of a multiplicity of suits to make the petition good in these respects under the authorities. The rule is recognized in all jurisdictions that, subject to very few exceptions, a court of equity will not interfere by injunction with criminal proceedings; but one exception to this rule, well established in Texas, is that a criminal prosecution under a void law, which destroys property and its use and enjoyment, will be enjoined by a court of equity. City of Austin v. Cemetery Ass'n, 87 Tex. 331, 28 S. W. 528, 47 Am. St. Rep. 114; A. P. Trewitt v. City of Dallas, 242 S. W. 1073, recently decided by this court and not yet [officially] published; Dibrell v. City of Coleman (Tex. Civ. App.) 172 S. W. 552; Goar v. Rosenberg, 53 Tex. Civ. App. 218, 115 S. W. 653; Robinson v. Galveston, 51 Tex. Civ. App. 292, 111 S. W. 1076; Ex parte Robinson, 30 Tex. App. 493, 17 S. W. 1057.

[5] The authorities in this state also establish as an exception to the general rule above stated that an injunction will be granted to stay a criminal prosecution, under a void law, for the purpose of avoiding a multiplicity of suits. Houston v. Richter (Tex. Civ. App.) 157 S. W. 189; C. & O. Ry. Co. v. Harmon, 153 Ky. 669, 156 S. W. 122, 45 L. R. A. (N. S.) 946; Dibrell v. City of Coleman, supra.

The third proposition, as to whether or not the case as pleaded against the criminal district attorney constitutes an action against the state of Texas so that the trial court and this court are without jurisdiction to hear and determine it, is perplexing and vexatious. The authorities do not seem to be in uniformity on the question. Text-books and decisions announce in general terms that criminal prosecutions under void laws may be enjoined by a citizen who is confronted with the deprivation of property rights in the prosecution or with a multiplicity of suits. Practically all of these decisions deal with applications for injunctions against municipal corporations and their officers.

The case of State v. Clark, 79 Tex. Cr. R. 559, 187 S. W. 760, seems to recognize the jurisdiction of civil courts to entertain an injunction suit against a district attorney to prevent prosecutions under a void penal

statute, or even under one declared valid by the Court of Criminal Appeals. when the prosecution invades vested property rights and the civil court considers the enactment void. On the contrary, the United States Supreme Court and the Supreme Court of Texas seem to entertain the view that a proceeding of this character is not a case against the party who is named as defendant, but is rather a proceeding against the state of Texas, itself.

In the case of Fitts v. McGhee, 172 U. S. 526, 19 Sup. Ct. 269, 43 L. Ed. 535, an injunction against the Attorney General of Alabama and others, including a district attorney, was granted by a United States court. The purpose of the suit was to enjoin the institution and prosecution of different specifically named proceedings, including a threatened criminal action under a penal statute. In that case the Supreme Court of the United States held that the federal courts were without jurisdiction to entertain the suit because of the inhibitions of the Eleventh Amendment to the United States Constitution; the suit being one against the state of Alabama, although officials of the state only were named as defendants. It was held that the effect of an injunction would be to restrain the state by judicial process from bringing an action in its own name through enjoining its officers and attorneys. The court said:

"As a state can act only by its officers, an order restraining those officers from taking any steps, by means of judicial proceedings, in execution of the statute of February 9, 1895, is one which restrains the state itself, and the suit is consequently as much against the state as if the state were named as a party defendant on the record."

The same principle was announced in the case of In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216. In that case the United States Circuit Court of Appeals enjoined certain officers of the state of Virginia from instituting and prosecuting a case in a state court. Some of them violated the order of the Circuit Court and applied to the Supreme Court for a writ of habeas corpus. The writ was granted on the ground that the Circuit Court was without jurisdiction for the reason that the injunction suit was a proceeding against the state of Virginia itself; for which reason the Circuit Court had no jurisdiction because of the provisions of the Eleventh Amendment to the United States Constitution.

No authority holds that an officer of the state may not be enjoined from doing acts in excess of his authority which are hurtful to the rights of a citizen. He cannot screen himself under the color of the authority of an unconstitutional law and threaten or commit personal wrongs without being subjected to the restraint of a court of equity, even though he acts in his official capacity.

244 S.W.—36

[6, 7] The distinction which the authorities seem to make between cases in which a state officer may be enjoined from proceeding under a void law and cases in which he may not be enjoined is not altogether clear to us. Apparently the rule is that when an officer of the state is specially charged with enforcing a law which is alleged to be unconstitutional, a specific duty being imposed upon him as a part of and in the very terms of the law, and it is alleged that he is about to commit or is committing a personal wrong or trespass against the plaintiff in enforcing it, then the courts have jurisdiction; the case being regarded as one against the officer rather than against the state. On the other hand, if the officer acts strictly within the scope of duty and authority imposed upon him generally by the Constitution and laws of the state and his acts are limited only to instituting and prosecuting formal criminal proceedings, then, such officer bearing no special relation to the particular statute alleged to be unconstitutional, a suit against him is a suit against the state and no jurisdiction exists. Mr. Hughes is an officer of the state and bears no particular official relation to this statute different from that which he bears to every other criminal law. No express direction to him to see to its enforcement exists.

In the case of Stephens v. Ry. Co., 100 Tex. 184, 97 S. W. 309, an injunction was sought to restrain the Attorney General and other state officials from performing their respective duties under a statute, which was alleged to be unconstitutional. Mr. Justice Brown, speaking for the Supreme Court in that case, said that the injunction granted by the Court of Civil Appeals operated to prevent the action of the only officers who were authorized by law to act for the state in the prosecution of the suit, and that it was in fact a proceeding against the state, for which reason the injunction should not have been granted.

As we understand the authorities by which we are to be directed upon this feature of the case, we deem it proper to hold that the court was without jurisdiction to grant the relief.

[8] Furthermore, this is a case of the kind in which a court should act with the greatest caution in the light of the record. Otherwise, a repetition of the situation out of which the case of State v. Clark, supra, arose might be brought about, because of the possibility of that court holding a view in conflict with ours as to the constitutionality of the law. The record revealing, as it does, that habeas corpus proceedings are pending before the Court of Criminal Appeals, and the decision of that court being final as to the validity of the statute with reference to criminal prosecutions, it is doubtful that under such facts and circumstances a civil court should grant an injunc-

tion in any event. The Court of Criminal Appeals is not bound by the decisions of civil courts construing criminal statutes, and its decision of a criminal case is final in a prosecution. This consideration exercises a valid influence in resistance to granting the relief sought. If the Court of Criminal Appeals holds the law invalid as being in conflict with section 19 of article 1, state Constitution, and in conflict with section 1 of Fourteenth Amendment of the United States Constitution, this will effectually remove the ground of grievance alleged. The appellee recognizes that such would be the effect of that action and in his answer precisely declares that in the event the Court of Criminal Appeals, in passing upon the habeas corpus, holds the law to be void, he will abandon prosecutions.

If the Court of Criminal Appeals holds the law to be valid, an injunction would not be effectual to restrain prosecution according to the views expressed in Clark v. State, supra.

The judgment is affirmed.