[Civ. No. 2616.   Third Appellate District.—February 9, 1924.]

J. P. WHYTE et al., Appellants, v. CITY OF SACRAMENTO (a Municipal Corporation), et al., Defendants.

[1] MUNICIPAL CORPORATIONS—TRAFFIC ORDINANCE—ACTION TO ENJOIN ENFORCEMENT—PLEADING.—In an action to enjoin the enforcement of a municipal traffic ordinance restricting the trucking business to certain streets, a complaint alleging that two of said streets are in an "unpaved condition," and for that reason "it is virtually impossible for plaintiffs' trucks to be operated over or upon either of said" streets, but which fails to give a description of the condition of the streets in order to show that they are "virtually impassable," is defective, and a demurrer thereto on the grounds that it is unintelligible, uncertain, and ambiguous is properly sustained.

[2] ID.—LEAVE TO AMEND — ABSENCE OF REQUEST — APPEAL.—Where the record on appeal does not show that, after defendants' demurrer was sustained a request or motion was made by the plaintiffs in the trial court for leave to amend the complaint in any particular, that point cannot be raised for the first time on appeal.

[3] ID. — DESCRIPTION OF RESTRICTED DISTRICTS — UNCERTAINTY. — A municipal traffic ordinance restricting the trucking business to cer-

tain streets is not rendered vague and uncertain by the use, in certain instances in describing the boundaries of the territory affected, of the expression "old city limits," where the ordinance is made certain in that particular by the description of the several traffic districts by specific reference to the streets and parts of the streets by which they are bound or limited and the specific mention of those streets or parts of streets which may be used or not used.

[4] ID.—LEGISLATIVE POWERS OF POLITICAL SUBDIVISIONS—REASONABLE BURDENS — DISCRIMINATION. — The power conferred upon cities, counties, towns, and townships, by section 11 of article XI of the state constitution, must be fairly and reasonably applied, or not invoked or exercised in such manner as to result in imposing upon the inhabitants of any of those political subdivisions unreasonably burdensome duties or obligations; and, while such power is essential to the full and proper functioning and consequently the complete accomplishment of the ends and purposes of municipal corporations and the other political subdivisions therein mentioned, it can never be so invoked and applied as to discriminate in favor of or against particular classes or persons as to whom no reasonable basis of discrimination can be said to exist.

[5] ID.—REASONABLENESS OF ORDINANCE—JURISDICTION OF COURTS.— The question of the reasonableness of an ordinance passed by a municipal corporation, whether, in enacting the ordinance, the governing board of the city proceed under authority conferred by section 11 of article XI of the state constitution or that conferred directly by its charter, is open to inquiry by the courts.

[6] ID.—FREEHOLDERS' CHARTERS — MUNICIPAL AFFAIRS. — While the legislature cannot impair or limit the exercise of the power vested in municipalities by section 11 of article XI of the state constitution, the exercise of such power is, by section 8 of article XI of the constitution, as construed by the courts, limited exclusively to "municipal affairs"; and a freeholders' charter does not supersede any general law which affects and applies to or involves matters involving the welfare of the people of the state as a whole.

[7] ID.—SCOPE OF AUTHORIZED LEGISLATION.—A municipal corporation governed by a freeholders' charter cannot pass any ordinance or adopt any regulation with respect to any subject or matter which does not come peculiarly within the legal description of "municipal affairs"—that is, any subject which concerns and affects the people of the state generally or as a whole—unless the authority to do so is expressly delegated to it by the legislature either through its charter or some general law.

[8] ID. — MUNICIPAL AFFAIRS — CONTROL AND USE OF STREETS.—The streets of a city belong to the people of the state and the use thereof is an inalienable right of every citizen of the state, sub-

ject to legislative control or such reasonable regulations as to the traffic thereon or the manner of using them as the legislature of the state may deem wise or proper to adopt and impose, and they do not come within the purview of "municipal affairs."

[9] ID.—RESTRICTION OF USE OF STREETS—LEGISLATIVE AUTHORITY OF CITIES.—*Although the legislature has not, through the freeholders' charter of the city of Sacramento, granted to said city or the governing body thereof the authority to adopt an ordinance restricting the trucking business within its limits, by vehicles having a capacity in excess of one ton in weight, to certain designated streets, such authority was granted by section 22 of the Motor Vehicle Act of 1917 (Stats. 1917, pp. 406, 407).*

[10] ID.—SACRAMENTO TRAFFIC ORDINANCE—CONSTITUTIONALITY OF.— *The ordinance of the city of Sacramento, adopted in 1922, restricting the trucking business by vehicles having a carrying capacity of one ton or over to certain designated streets, may not be held to be unreasonable in that it is discriminatory against any class of persons or that it imposes oppressive burdens upon the persons affected thereby or that it is violative of the mandate of section 1 of article XIV of the federal constitution that no state shall deny to any person within its jurisdiction the equal protection of the laws.*

[11] ID. — NECESSITY FOR REGULATION — PROVINCE OF LEGISLATURE. — *The legislative department of the government may properly take notice of the fact that, if motor vehicles are permitted to be used upon and over the public streets of a city, without any compulsory reasonable restraint whatsoever as to the manner of using them, the result would be that the traffic thereon would be such as to impair, if not in some instances actually to prevent, the orderly and convenient transaction of the usual or ordinary business maintained and conducted in the business districts of such city, to the end that it may regulate such traffic so as to reduce to the lowest possible minimum the dangers and the inconveniences which naturally are the consequences thereof.*

[12] ID.—CLASSIFICATION OF VEHICLE USERS.—*A municipal ordinance restricting the use of motor vehicles upon certain streets and which applies to all persons in the city engaged in using vehicles of a capacity in excess of one ton in weight and exclusively used in the carrying of merchandise or articles of freight, does not discriminate against any particular person, but is based upon a classification which involves a real and substantial distinction, having a reasonable and just relation to the thing in respect to which such classification is imposed.*

APPEAL from a judgment of the Superior Court of Sacramento County.   Charles O. Busick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Irving D. Gibson for Appellants.

R. L. Shinn, City Attorney, for Respondents.

HART, J.—The plaintiffs, five in number, are either co-partnerships or corporations, and are engaged in the general trucking business in the City of Sacramento, carrying and hauling, by means of motor-trucks, articles of merchandise, commodities, materials, and other personal property of every kind and description, "which may be offered to plaintiffs generally to be carried and hauled," over, upon, and across the streets of said city, "both to and from points entirely within the territorial limits of said city and to and from points outside of the territorial limits of said city to and from points therein," and for that purpose the plaintiffs own and operate over, upon, and across the streets of said city motor-trucks "having a carrying capacity of one ton and of more than one ton." In other words, the plaintiffs are, and for several years last past have been, engaged in the business of transporting freight from point to point within the limits of said city and from points outside of said limits to points within said limits and *vice versa* and for that purpose have used and are now using motor-trucks of a ton and of more than a ton carrying capacity.

The defendants, other than the City of Sacramento, are members of the city council or governing board of said city, and certain other city officials directly charged with the duty of enforcing the local ordinances and regulations adopted or passed by said governing board.

On the twenty-second day of June, 1922, said city council regularly passed an ordinance for said city, known as "Ordinance No. 80, Fourth Series," the object of which is, as its title indicates, to regulate "travel, traffic and parking upon the streets and other public places laid out for the use of vehicles and pedestrians in the City of Sacramento," etc., also prescribing a penalty for the violation of the provisions thereof. Said ordinance, among others, contains the following provisions:

"Section 2. All vehicles having a carrying capacity of one ton or over, when engaged in the business of hauling

or conveying goods, wares, freight or merchandise of any description to any place in Traffic Districts Nos. 2 and 3, must travel either on 'I' Street or on 'L' Street to the cross street nearest the destination of such load; and such vehicles must depart from a place within said Traffic Districts Numbers 2 and 3 after loading, by the nearest intersecting street running in a northerly or southerly direction.

"Section 3. It shall be unlawful for any truck of more than one ton capacity to travel on 'J' or 'K' Streets in Traffic Districts Numbers 2 and 3 for more than one block consecutively, and then only for the purpose of loading or unloading in the block traversed.

"Section 4. All motor trucks of over one ton capacity operating as cárriers of freight, rock, sand, gravel, asphaltic mixtures or other dead weight materials to and from points within or within and without the City of Sacramento, whether operating on a regular schedule or intermittently or occasionally, shall enter and leave and while within the old city limits use the following streets and routes only:

"West of 31st and south of the center line of M. Street all east and west traffic shall be upon Q Street or Y Street only, except within such single block upon any other east and west streets upon which such truck may have freight to deliver or receive, and any traffic entering or leaving the old city limits south of the center line of M Street shall proceed to or from the line of such old city limits by the most direct route to or from Q or Y Street, or if stops are to be made on any other streets in the old city limits other than Q or Y Street, trucks shall proceed to or from the line of the old city limits or Q or Y Street to or from the point of such loading or unloading by the most direct north and south street.

"Such trucks shall cross Traffic District Number 2 only upon 6th Street.

"In like manner, west of 31st Street and north of the center line of M Street all east and west motor truck traffic of the kind in this section above defined shall be upon E Street or H Street only."

The penal clause of the ordinance makes the violation of the above provisions a misdemeanor, punishable by a fine of not more than five hundred dollars or by imprisonment in

the city jail for not more than six months or by both such fine and imprisonment.

The complaint is a lengthy document and many of its averments involve (and in the nature of the case necessarily so) legal conclusions. The complaint, however, first admitting that the plaintiffs herein, in the conduct of their trucking business within the limits of the City of Sacramento use and operate trucks of more than one-ton capacity, proceeds to set out in detail the character and extent of the carrying business of each of the plaintiffs and in effect alleges that it is necessary to the convenient, proper, and successful carrying on of said businesses, that the plaintiffs should have the free, unrestricted, and unobstructed use of all the streets of said city, over, upon, and across which to operate their motor-trucks, subject, of course, to such reasonable regulations of such use as are general and uniform or applicable to all persons of the same class or making like use of said streets. It is alleged that sections 2, 3, and 4 of article IX of said ordinance, as hereinabove set forth, are unreasonable in that they are discriminatory against the plaintiffs for the reason that the latter are prohibited from making use of their motor-trucks of more than a ton capacity "over and upon the same streets and highways and in the same method, manner and under the same circumstances that is permitted other persons, copartnerships, firms and corporations similarly situated and using said streets and highways for similar purposes and imposing upon said streets and highways traffic of similar weight and character; that said sections are unreasonable and invalid in that said sections or parts thereof make, or attempt to make, it unlawful for plaintiffs to exercise and pursue a lawful business, to wit, the operation of their said motor trucks in a lawful manner and to make legitimate use of their property; . . . and also in that said sections restrict, or attempt to restrict and burden, the operation of said motor trucks by plaintiffs so as to compel said trucks to be operated over and along a circuitous route to and from their destinations within said City of Sacramento and unnecessarily and unreasonably increases the distance necessary to be traveled in the operation of said motor trucks in the conduct of the respective businesses of plaintiffs in said city," etc.; that said sections are invalid because they place a greater burden upon motor-

trucks of over one-ton capacity operating as carriers of rock, sand, gravel, asphaltic mixtures, or other deadweight materials while entering, leaving, and operating within "the so-called old city limits of said City of Sacramento," than is placed upon vehicles of the same carrying capacity by section 2 of said article IX. It is further alleged that section 4 of article IX of said ordinance is also unreasonable and invalid "in that said section arbitrarily and without reason divides that portion of said City of Sacramento west of 31st street into two districts and likewise arbitrarily and without reason fixes the center line of M street in said city as the dividing line between said districts, the effect thereof being to restrict any and all motor-trucks of over one ton capacity entering or leaving said so-called old city limits west of 31st street to the use of only two east and west streets within said respective districts so arbitrarily created, that is to say, all traffic of such character south of the center line of M street is restricted to Q and Y streets only, and all such traffic north of said center line of M street is restricted to E and H streets only, for the purpose of traveling in an easterly or westerly direction; that said provisions of said section 4 were and are unreasonable and invalid for the reason that because of the present unpaved condition of Q street and H street in said City of Sacramento it is virtually impossible for plaintiffs' trucks to be operated over or upon either said H street or said Q street and that said provisions of said section 4, therefore, virtually restrict plaintiffs' trucks to the use of but one street in each of said districts so created west of 31st street, that is to say, E street while traveling north of the center line of M street and Y street while traveling south of the said center line of M street."

The other allegations of the complaint need not be referred to herein. The gist of the whole complaint is that the ordinance discriminates against persons of the same class, that the city council of said city, in enacting said ordinance, transcended its legal authority and that for certain reasons stated in the complaint the provisions of said ordinance contained in sections 2, 3, and 4 of article IX are in contravention of the mandates of the state and federal constitutions.

The prayer was for a decree perpetually enjoining and restraining the defendants from enforcing or attempting to enforce the provisions of said ordinance, and from in any way preventing and interfering with plaintiffs, or either of them, etc., "from or in the use or operation of any motor truck or trucks of more than one ton capacity while operating as carriers within the territorial limits of said city . . . , and that sections 2, 3 and 4 of Article IX of said Ordinance No. 80, Fourth Series, be adjudged and decreed to be wholly invalid, void and of no effect."

The defendants demurred to the complaint on general and special grounds and the same was sustained without leave to amend. The defendants also interposed and filed an answer specifically denying the allegations thereof.

Judgment was entered in favor of defendants after demurrer sustained and the injunctive relief called for thereby denied.

The plaintiffs appeal from the judgment and the order denying a temporary injunction.

Considering the ordinance in connection with the official map of the City of Sacramento, which is referred to in the complaint, and which it was stipulated at the hearing of the appeal might be used in passing upon and determining the points urged for a reversal of the judgment—that is, in considering the grounds upon which it is insisted that the ordinance in question is at variance with certain provisions of the constitution—the districts within the limits of which the ordinance prohibits the use of the streets in said city by the persons mentioned therein may thus be explained: In the first place, it should be stated that the streets of the City of Sacramento, while not directly running north and south and east and west, substantially or practically run in those directions, those running each and west being alphabetically named and including all such streets from B on the north to Y Street on the south, and those running north and south being designated by numbers and including all such streets from 1st on the west to 31st Street on the east. The north and south streets are what may be called "cross-streets." Traffic District No. 2, as established by the ordinance in question, extends, north and south, from I Street to L Street, and, east and west, from 4th Street to 12th Street. In this district, "cross-town" traffic is re-

stricted to 6th Street, except that the trucks mentioned in
section 2 are permitted to use any cross-streets in said dis-
trict from I or L Street nearest to the destination of any
load which is to be delivered within the district. The use
of all the cross or north and south streets west of 4th Street
and east of 12th Street for any purpose is not limited or
restricted. In other words, any truck over one-ton capacity
entering said city either from the north or the south is at
liberty, so far as the ordinance in question is concerned, to
cross the city in that direction upon or over any of the
north and south streets between 12th and 31st Streets and
between 1st and 4th Streets.

Thus it will be seen that when delivery of a load in traffic
district No. 2 is to be made the truck may enter the district
either on I or L Street, traverse either of those streets to
the street running north and south which is nearest to the
point of delivery, thence over that street to the street run-
ning east and west where the point of delivery is situated
and then follow the east and west street to said point.
From the complaint, aided by the map of the city showing
the several traffic districts, it is clear that, on entering the
city from any point on the north side thereof where such
entrance can be made, a truck, wherever in the city its point
of destination may be, may travel from said point on the
north and south street either to E or H Street and then
turn east or west on either one of those streets, according
to the direction in which the point of destination is situated
to the cross or north and south street leading to its destina-
tion. In entering the city from the south by way of any
entrance into said city from that direction, such truck would
be required to proceed from its point of entrance to Y or Q
Street and then turn east or west to the nearest cross-street
to the point of its destination. According to the map, as
well as to the complaint, M and I Streets at 1st Street are
the only streets in the city whereby entrance thereinto may
be made from the west. Likewise it appears that entrances
into the city from the east at 31st Street may be made by
several different east and west streets, including Y, H, and
E Streets.

It will be observed from the foregoing explanation of the
traffic plan and regulations devised and prescribed by the
ordinance that there are only certain occasions on which

the trucks referred to therein may be required to travel
more than two blocks out of their way to reach their destina-
tion and they are when the starting point or point of destina-
tion of such trucks is from or to the termini of one of the east
and west streets—either M or J or K Street—in which case
a detour of six or eight blocks from a direct course would
perhaps be necessary to reach the point of destination.

The foregoing is a sufficient explanation of the scheme
involved in the ordinance under attack to subserve the pur-
poses of this decision.

There are several points, rather subsidiary and subordi-
nate to the main contentions of the appellants, which may
first be considered and disposed of.

[1] The complaint, it will be seen, alleges that Q and H
Streets, two of the streets to the use of which for their
trucking business the plaintiffs are restricted by the ordi-
nance, are in an "unpaved condition," and for that reason
"it is virtually impossible for plaintiffs' trucks to be op-
erated over or upon either of said" streets. As to that aver-
ment, the grounds of the demurrer are that it is unintelli-
gible, uncertain and ambiguous. We think the demurrer
as to said averment was good. A street unpaved may be in
as good a condition for use by all kinds of vehicles as a
paved street. A street which has merely been graveled and
rolled is very often as useful and convenient for all practi-
cal purposes as a street paved according to the modern idea
of street and highway improvement. If it is not practicable
to use the streets complained of by motor-trucks or other
vehicles because of their bad condition—that is because they
are uneven or filled with chuck holes or for any other
reason—that fact should have been pleaded in a direct and
specific manner so as clearly to indicate or show that they
cannot be used by the plaintiffs in their freight and carry-
ing business by means of motor-trucks with safety or reason-
able convenience. In other words, the complaint should have
given some description of the condition of the streets in
order to show that they are "virtually impassable," as the
complaint alleges, which allegation, by the way, involves
merely a conclusion from the preceding indefinite allegation
that they were in an "unpaved condition." [2] But an un-
answerable reply to the consideration of the point here is
that, since the record does not show that a request or motion

was made by the plaintiffs in the court below for leave to amend the complaint in any particular, said point cannot be raised for the first time on appeal. As is said in *Buckley* v. *Howe,* 86 Cal. 596, 604 [25 Pac. 132, 134]: "The privilege of amending, after trial of issues of law raised by the demurrer, is not one of right, but one resting in the discretion of the trial court. (Code Civ. Proc., sec. 472.) If the plaintiff desired again to amend, she should have applied to the court below, and, if refused, exception should have been taken. It is too late to make the point for the first time in this court when nothing appears in the record to show an abuse of discretion." (See, also, *Durrell* v. *Dooner,* 119 Cal. 411, 413 [51 Pac. 628]; *Prince* v. *Lamb,* 128 Cal. 120 [60 Pac. 689]; *Williamson* v. *Joyce,* 140 Cal. 669 [74 Pac. 290] *Murphy* v. *Murphy,* 57 Cal. App. 182, 186 [207 Pac. 43, 44].)

[3] The next of the points above referred to is this: That the ordinance confines the operative effect of its provisions to a territory in the City of Sacramento whose boundaries are described as the "old city limits," and that that description is vague and indefinite, or bears no such meaning as to convey to the understanding what particular districts or parts of the City of Sacramento the ordinance has reference to or within which its provisions are intended to apply or have force. The reply to that proposition is, though, that the description of the several traffic districts by specific reference to the streets and parts of the streets by which they are bound or limited and the specific mention of those streets or parts of streets which may be used and not used make the ordinance in those particulars certain and definite. No one reading the ordinance can fall into any misapprehension as to the particular streets or parts of streets that may be used by the trucks mentioned in the ordinance or the streets or parts of streets which may not thus be used.

Counsel for the respondent further contends that the restrictions as to the use of the streets as prescribed by section 4 of the ordinance apply not only to Q and Y Streets, but all cross or north and south streets east of 12th Street. We do not so understand the language of the ordinance. Section 4 specifically refers to traffic on east and west streets west of 31st and the omission of north and south

streets from said section necessarily excludes those streets from within the purview of the restrictions, except such north and south streets as are within the other two traffic districts.

We are now brought to the consideration of the grounds upon which the contention is based that the passage of the ordinance was in excess of any authority conferred upon the city council either by the constitution or the legislature; that the measure is discriminatory as against the plaintiffs and in favor of other persons engaged in like businesses; that it imposes upon those upon whom its provisions, if enforced, will operate, unreasonable, onerous, and oppressive burdens; that it is in contravention of the provision of section 1 of article XIV of the federal constitution guaranteeing to every citizen within the jurisdiction of every state the equal protection of the laws.

The ordinance under attack represents the exercise of the police power, with the right to employ and enforce which, within their respective limits, the constitution has expressly invested every county, city, town, and township, in the state, provided that the ordinance or regulations passed or adopted for that purpose do not conflict with general laws. (Art. XI, sec. 11, Const.)  [4]  Of course, the power thus conferred upon cities, counties, towns, and townships must be fairly and reasonably applied, or not invoked or exercised in such manner as to result in imposing upon the inhabitants of any of those political subdivisions unreasonably burdensome duties or obligations. The power vested by said section of the constitution is essential to the full and proper functioning and consequently the complete accomplishment of the ends and purposes of municipal corporations and the other political subdivisions therein mentioned; but it can never be so invoked and applied as to discriminate in favor of or against particular classes or persons as to whom no reasonable basis of discrimination can be said to exist. (See *Ex parte Frank*, 52 Cal. 606 [28 Am. Rep. 642]; *In re Smith*, 143 Cal. 368 [77 Pac. 180]; *Ex parte Dickey*, 144 Cal. 234 [103 Am. St. Rep. 82, 1 Ann. Cas. 428, 66 L. R. A. 928, 77 Pac. 924]; *Ex parte Hayden*, 147 Cal. 649 [109 Am. St. Rep. 183, 1 L. R. A. (N. S.) 184, 82 Pac. 315]; *Ex parte Foley*, 172 Cal. 744 [158 Pac. 1034]; *In re Hines*, 33 Cal. App. 45 [164 Pac. 339].)  [5]  And, it may be

added, the question of the reasonableness of an ordinance · passed by a municipal corporation, whether, in enacting the ordinance, the governing board of the city proceed under authority conferred by said section of the constitution or that conferred directly by its charter, is open to inquiry by the courts. (*In re Smith,* 143 Cal. 368 [77 Pac. 180]; *Lawton* v. *Steele,* 150 U. S. 133 et seq. [38 L. Ed. 385, 14 Sup. Ct. Rep. 499, see, also, Rose's U. S. Notes]; *In re Junqua,* 10 Cal. App. 602 [106 Pac. 159]; *In re Throop,* 169 Cal. 93 [145 Pac. 1029]; *Dobbins* v. *Los Angeles,* 195 U. S. 223, [49 L. Ed. 169, 25 Sup. Ct. Rep. 18, see, also, Rose's U. S. Notes].)

[6] While the legislature cannot impair or limit the exercise of the power vested in municipalities by said section 11 of article XI of the constitution, the exercise of such power is, by section 8 of article XI of the constitution, as construed by the courts, limited to certain particular subjects. The last-mentioned section declares that when a freeholders' charter of a city or a city and county (and the City of Sacramento is governed by and operates under such a charter) has been approved by the legislature "it shall become the organic law of such city or city and county *and supersede all laws inconsistent therewith.*" The language of said section which is in italics has been, and, in the very nature of the case, should be, held to apply exclusively to "municipal affairs," and, consistently therewith, it has further been held that a freeholders' charter does not supersede any general law which affects and applies to or involves matters involving the welfare of the people of the state as a whole. [7] It follows, therefore, that a municipal corporation governed by a freeholders' charter, cannot pass any ordinance or adopt any regulation with respect to any subject or matter which does not come peculiarly within the legal description of "municipal affairs"—that is, any subject which concerns and affects the people of the state generally or as a whole—unless the authority to do so is expressly delegated to it by the legislature either through its charter or some general law. This proposition is so well settled and has been declared so often in the cases that authorities need not here be cited to prove its soundness.

[8] Among those subjects which are of general concern to the people of the state or which do not come within the

purview of "municipal affairs," but in the regulation of which the inhabitants of a city have a peculiarly direct interest, are the streets of such city. It is settled that the streets of a city belong to the people of a state and the use thereof is an inalienable right of every citizen of the state, subject to legislative control or such reasonable regulations as to the traffic thereon or the manner of using them as the legislature of the state may deem wise or proper to adopt and impose. (*Ex parte Daniels,* 183 Cal. 636, 639 [21 A. L. R. 1172, 192 Pac. 442].)

[9] The legislature has not, through the charter of the City of Sacramento, granted to said city or the governing body thereof, the authority to enact the legislation involved in the ordinance under attack.

There is, however, or was at the time of the enactment of the ordinance in question, a general law vesting freeholders' chartered cities with full control over and the right to regulate the use of the streets within their respective limits. (Sec. 22, Stats. 1917, pp. 406, 407.) Said section reads in part as follows: "provided, further, that local authorities may by general rule, ordinance or regulation, exclude vehicles from any cemetery or ground used for the burial of the dead, or exclude vehicles used solely or principally for commercial purposes from any park or part of a park system where such general rule, ordinance, or regulation is applicable equally and generally to all other vehicles used for the same purpose; provided, that at the entrance, or at each entrance if there be more than one, to such cemetery or park from which vehicles are so excluded, there shall have been posted a sign plainly legible from the middle of the public highway on which such cemetery or park opens, plainly indicating such exclusion and prohibition; and provided, further, that the local authorities of any city, town, or city and county may impose additional restrictions to those herein contained applicable to vehicles exclusively used in the carrying of merchandise or articles of freight and of a capacity in excess of one ton in weight and may designate certain streets whereon heavy laden vehicles may be excluded or declared to be 'one way' streets, may further restrict, or prohibit, the use of trailers."

It cannot be doubted that the foregoing provision confers upon municipalities, governed by freeholders' charters, plen-

ary authority to adopt such regulations as to the use of the streets of such municipalities by the motor vehicle trucks therein referred to as are prescribed by the ordinance in question. It is, however, suggested, in the reply brief of appellants that the power to adopt local regulations can be delegated by the legislature to such municipalities only by express grant in their charters. *In re Galusha,* 184 Cal. 697, is cited as lending some support to this suggestion. But the proposition is obviously untenable and the case cited does not support it. We can conceive of no theory upon which it can for a moment be maintained that the force of a general law is not equal to that of a city charter or any other special act. The constitution does not expressly declare, nor does it contain language which is susceptible of such a construction, that the legislature can delegate power to a municipal corporation through its charter only or that such power cannot be so delegated through the instrumentality of a general law.

[10] We perceive no ground upon which the ordinance under attack may be held to be unreasonable in that it is discriminatory as against the plaintiffs or any other class of persons or that it imposes oppressive burdens upon the plaintiffs or that it is violative of the mandate of section 1 of article XIV of the federal constitution that no state shall deny to any person within its jurisdiction the equal protection of the laws.

The conditions surrounding the use of the streets and highways of the state are vastly different now from what they were prior to the invention and the introduction of the automobile as a factor in the world's economy. It is so well known, as a matter of common and current knowledge, that the courts are forced to take cognizance of the fact, that the automobile has become a common method for the transportation, locally, of freight and passengers and for business purposes generally, as well as for the purposes of pleasure. Likewise, it is known that in cities of large populations the streets thereof often become, or would so become if the traffic thereon were left to the unrestrained liberty of those using such machines, so obstructed and congested as to render those thoroughfares practically useless for any other purpose than that to which they are put by the owners or drivers of such vehicles. In fact, even under

proper regulations by the authorities, the use of those machines on the streets and highways of the state is a constant menace to the life and the limbs of the people, as well as injurious to the streets and highways. [11] If they were to be permitted to be used upon and over the public streets of the cities in the absence of any compulsory reasonable restraint whatsoever as to the manner of so using them it is readily to be seen that the result would be that the traffic thereon would be such as to impair, if not in some instances actually to prevent, the orderly and convenient transaction of the usual or ordinary business maintained and conducted in the business districts of such city. It is, therefore, proper that the legislative department of the government should take notice of that fact to the end that it may regulate such traffic so as to reduce to the lowest possible minimum the dangers and the inconveniences which naturally are the consequences thereof. Indeed, it is safe to conjecture that the time will come, and not in the far-distant future, when even a more drastic regulation of automotive traffic may be required than now, and that the power of police may be drawn on by the state, of whose sovereignty it is an attribute, to accomplish such a result, cannot be doubted. The police power is elastic. Its precise limits cannot be defined. It may be so extended as to meet the exigencies or new conditions arising from time to time as essential incidents of the incessant and seemingly illimitable progress of science and invention. As before stated, the exercise of the power is subject to no restraint other than that its crystallization into practical or concrete application must be reasonable. But what is a "reasonable" exercise of the power is relative. It is dependent upon the character or nature of the conditions to be met or overcome. What may be a perfectly reasonable police regulation under certain particular conditions might be unreasonable under other and different conditions. The regulation, at the present time, of traffic on streets and highways requisite for the safety of the people and the protection against injury of their property, while reasonable under conditions now prevailing, would undoubtedly have justly been regarded as unreasonable before the automobile became a prominent part of the industrial system and other activities of the world.

The controlling consideration prompting the enactment of the ordinance in question is, as we apprehend, to remove from the principal business districts of the City of Sacramento the inconveniences which would necessarily follow from the prosecution of a motor-truck freight business, by means of large, heavily loaded and cumbersome trucks over and through said districts, thereby obstructing the convenient and orderly course of business and the ordinary traffic therein. We assume, from the description in the ordinance of the division of the city into traffic districts, that the specific object sought to be attained by this ordinance was to keep the traffic referred to therein from certain business blocks in J and K Streets of said city for the reason suggested, as well as for the purpose of preserving those streets over which the traffic is not permitted to be carried on, except in those instances in which portions thereof are necessary so to be traversed to reach the points of destination of such trucks.

[12] The ordinance before us, as will be observed, is strictly in accord with the authority vested in municipal corporations by section 22 of the Motor Vehicle Act of 1917. The ordinance applies to all persons in the City of Sacramento engaged in using vehicles of a capacity in excess of one ton in weight and exclusively used in the carrying of merchandise or articles of freight. Thus it is readily to be noted that the ordinance does not discriminate against any particular person. All of the class engaged in the business mentioned within the limits of the City of Sacramento are subject to the terms of the ordinance. In other words, the ordinance imposes no greater burdens upon one of the class mentioned than are laid upon others of the same class or engaged in the same calling under the same conditions. It is settled that when a regulatory ordinance applies equally to all engaged in one kind of business there is no discrimination. (*Powell* v. *Commonwealth*, 127 U. S. 678 [32 L. Ed. 253, 8 Sup. Ct. Rep. 992, see, also, Rose's U. S. Notes].) The classification made by the ordinance, to wit, upon the basis of the weight of the vehicle, the load it carries and the injurious effect thereof upon the streets, involves a real and substantial distinction, "having a reasonable and just relation to the things in respect to which such classification is imposed." (*Barbier* v. *Connolly*, 113 U. S. 27, 31

[28 L. Ed. 923, 5 Sup. Ct. Rep. 357, see, also, Rose's U. S. Notes].)

The foregoing views answer the proposition that the ordinance denies to the plaintiffs the "equal protection of the law" within the meaning of that mandate of the federal constitution. (See *In re Kotta,* 187 Cal. 27, 31 [200 Pac. 957].)

It is true that the plaintiffs and all others whose motor-truck freight business comes within the terms of the ordinance will, by reason thereof, be subjected to more or less inconvenience and perhaps some extra expense. But, in the enforcement of nearly all regulatory provisions of police enactments, there are added burdens or inconveniences. To these, when not so unreasonable as to be unnecessarily burdensome, all citizens must yield for the general or common good. The incidental and necessary burdens and inconveniences of the regulations do not of themselves render the regulation unreasonable. Nor will the extra expense which obedience to the terms of the ordinance may entail upon those whose business falls within the purview thereof itself stamp the ordinance as unreasonable.

The cases of *Waters-Pierce Oil Co.* v. *Hot Springs,* 85 Ark. 509 [109 S. W. 293], *Clausen* v. *De Medina,* 82 N. J. L. 491 [81 Atl. 924], and *Lossing* v. *Hughes* (Tex. Civ. App.), 244 S. W. 556, are not in point in this case. The case of *Waters-Pierce Oil Co.* v. *Hot Springs* involved an ordinance requiring fees of owners of vehicles for the privilege of using the city streets and embraced a classification of vehicles "based upon no difference in kind, size, capacity, or weight, or their relative tendency to injure the streets, and arbitrarily fixes a tax of $50 on vehicles used for transporting oils and a tax of $10 or less on vehicles of the same kind, size and capacity used for other purposes." The court held that the ordinance was unreasonable because it was discriminatory against the owners of vehicles used for transporting oil, also holding that there was no substantial grounds for a distinction between such vehicles used for transporting oil and those of the same kind and character not used for that purpose.

In *Clausen* v. *De Medina, supra,* a board of boulevard commissioners to whom the control of the roads in the county was committed, adopted a rule excluding from the use of a certain boulevard any motor vehicle used for busi-

ness purposes, except to deliver and receive its load, in which case it was required to leave the boulevard east and west at the nearest traveled cross-street. The supreme court of New Jersey held that the rule was beyond the power of the board of commissioners and in conflict with the state statute, since the test for exclusion adopted by the commissioners was the use to which the boulevard was put, while the test prescribed by the statute was the weight and not the use.

In *Lossing* v. *Hughes* the statute required license fees and registration of motor-trucks and tractors used by all private owners, except farmers, and prohibiting commercial motor vehicles with a greater capacity than eight thousand pounds to be used by anyone except for agricultural purposes. The court of appeals of Texas held that the statute was discriminatory in that it was not based upon a proper classification and that it was, therefore, repugnant to section 1 of article XIV of the federal constitution guaranteeing the equal protection of the laws to the citizens of every state.

We think it is quite plain that there is no analogy between the cases last considered and the case at bar. The ordinance here does no more than what the statute expressly declares that municipal corporations may do with respect to the regulation of motor-trucks of more than a ton-carrying capacity used in such municipalities for the purpose of transporting as a business freight, merchandise or other articles from point to point therein. We do not think that anyone would undertake to maintain that the statute vesting the city with this power violates any provisions of our own constitution or any mandate of the federal constitution. Indeed, in view of the fact that the large auto machines are being constantly employed for all purposes in the cities and towns, as well as over the public highways generally in the state it would well be regarded as evidence of marked impotency in the legislative department of the government if it was in the least degree hamshackled so as to prevent proper and reasonable control and regulation of the use of such dangerous business and pleasure instrumentalities. It has never been doubted that the local governments of the state, having that power vested in them by the legislature, may establish parking zones in the cities and towns and otherwise regulate the use of the ordinary automobiles.

But it is further contended by the plaintiffs that there is a discrimination as between the trucks that may be used for freight transportation purposes. It is said that there is a heavier burden imposed by section 4 of article IX on motor-trucks of one-ton capacity or over which carry rock, sand, gravel, etc., than is imposed upon the motor vehicles of the same carrying capacity by section 2 of said article. We do not think the ordinance intends any such discrimination. Section 2, it will be noted, refers to such trucks as are engaged in the hauling of "goods, wares, freight or merchandise of any description." Section 4 specifically refers to such trucks as are engaged in hauling "rock, sand, gravel, asphaltic mixtures or other dead weight materials."

We think under a reasonable construction of the ordinance the articles which section 4 refers to may be regarded as articles of "freight" just as much as the "freight" referred to in section 2. In this view the trucks mentioned in section 4 would not be excluded from the right to use the streets which the trucks mentioned in section 2 are at liberty to use under the terms of the ordinance.

Our conclusion is that the ordinance involves a reasonable and just regulation of street traffic in the City of Sacramento.

In justice to ourselves it should be stated that, although the proposition is not adverted to in any of the briefs on file herein or was not mentioned by either of the attorneys for the parties when the case was called for oral argument, it occurred to the court, after this opinion had been almost completed, that the Motor Vehicle Act of 1923 (known as the "Breed Motor Vehicle Act," Stats. 1923, p. 517), might have had the effect of repealing the ordinance under review. On examining the statute of 1923, it appeared to us that such was the effect thereof. Upon calling the attention of the city attorney to the proposition, that officer conceded that the ordinance had been wiped out by the said statute, but insisted that a decision of the case was required because of the large amount of costs involved. The question upon whom that burden must fall is, of course, dependent upon the result herein arrived at.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.