[Crim. No. 1851. In Bank.—January 3, 1915.]

In the Matter of the Application of R. A. THROOP, Petitioner, for a Writ of Habeas Corpus.

MUNICIPAL ORDINANCE—MAINTENANCE OF STONE CRUSHER—UNREASONABLE RESTRICTIONS AND DISCRIMINATIONS—VOID ORDINANCE.—A municipal ordinance, which after dividing the municipality into different districts, prohibits the maintenance of a stone crusher in one of such districts containing upwards of two thousand acres, a greater part of which is sparsely settled, or the maintenance of such crusher in the center of an area of such district containing five hundred acres, which is admittedly unimproved, undeveloped, and practically uninhabited, but which allows such maintenance in another district containing only 11.65 acres situated in the heart of the city and surrounded by residences and other buildings on all

sides, is unreasonable and void. Although the district where the business is permitted which is prohibited in the other is immediately surrounded by a poorer class of residences, the occupants of such residences are entitled in law to as much consideration as those occupying the more pretentious residences in the restricted district.

ID.—CONCRETE MATERIALS—BUSINESS OF PRODUCING CANNOT BE ARBITRARILY SUPPRESSED.—The business of producing materials for the making of concrete to be used in the construction of improvements in cities and towns, and for roads and highways, if maintained within the confines of a city or county without becoming a public nuisance or injurious to the health, comfort, safety, or welfare of the inhabitants, cannot by legislative bodies be arbitrarily suppressed or interfered with.

ID.—POLICE POWER OF MUNICIPALITY—REGULATION OF STONE CRUSHER—LIMITATIONS ON EXERCISE OF POWER.—A municipality in the exercise of the police power vested in it by the state constitution, has the undoubted right by ordinance to regulate the business of operating a stone crusher within the city limits, but such ordinance must be reasonable and for the purpose of protecting the public health, comfort, safety, or welfare.

ID.—ORDINANCE HAVING NO RELATION TO POLICE POWER.—The attempted regulation by the ordinance in question of the business of maintaining a stone crusher has no relation to the ends for which the police power exists,—namely, to protect the public health, comfort, safety, or welfare. An ordinance which prevents the operation of such crusher in a sparsely settled territory of 2163 acres, five hundred of which are undeveloped and practically uninhabited, and allows its operation in a small area of 11.65 acres in the center of a city surrounded by "poorer classes of residences," does not subserve the ends for which the police power exists.

APPLICATION for a Writ of Habeas Corpus directed to the Marshall of the City of South Pasadena.

The facts are stated in the opinion of the court.

Guy Eddie, for Petitioner.

William J. Carr, for Respondent.

SULLIVAN, C. J.—The petitioner was taken into custody by virtue of process issued out of the recorder's court of the city of South Pasadena for alleged violation of ordinance of that city number 264, adopted in 1908, and certain ordinances amendatory thereof. He seeks discharge on the ground, among others, that the ordinances which he is

charged with violating are unreasonable and void. The ordinance divides the city into three districts, numbered 1, 2, and 3. The entire area of South Pasadena comprises approximately two thousand two hundred acres of land. District No. 1 contains 25.25 acres; district No. 2 contains 11.65 acres, and in district No. 3 there are 2163 acres. District No. 1 embraces the retail business section; district No. 2, known as the "Industrial District," is situate in a populous part of the city. As stated in the petition for the writ, it is "densely surrounded by residences and other buildings on all sides for a distance of many blocks in every direction, and is itself very largely built up." District No. 3 is known as the "Residence District," and, as stipulated in this proceeding by the respective parties, "the greater part of the district is sparsely settled, one area containing 500 acres being unimproved, undeveloped and practically uninhabited."

Section 51b of the ordinance, as amended, reads as follows:

"It shall be unlawful and is hereby declared to be unlawful for any person, persons, firm or corporation to erect or cause to be erected, maintain or cause to be maintained, occupy or cause to be occupied any factory, warehouse, storehouse, blacksmith shop or horse shoeing shop, livery stable, lumber yard, planing mill, coal yard, hay and feed yard, machine shop, bottling works, brick yard, canning works, carpet cleaning works, railroad shop, power house, feed or flour mill, feed or sales stables, foundry, packing house, ice factory, laundry, oil tank, piano or organ factory, pattern works, *stone crusher*, rolling mill, fire works factory, gas works, moving picture development works, moving picture photographic works or camp, or a place where persons congregate or assemble for the purpose of making and producing moving picture views and scenes, or any manufacturing establishment, or any storage or warehouse business of any kind or character in district No. 3 of said general fire limits."

The ordinance excludes from district No. 1 the buildings, occupations, and businesses prohibited in district No. 3 but inferentially permits them in district No. 2. Presumably the stone crusher is included in the list mentioned in the section by reason of the noise and dust which usually result from its operation. The petitioner at the time of his arrest maintained and operated in district No. 3 a stone crusher, in plain violation of the provisions of section 51b. The plant of the

petitioner is situate in the "Arroyo Seco," on the western boundary of the city. The petitioner owns fourteen acres in this area. The Arroyo Seco is what is known as a "wash." In the vicinity of the crusher the "wash" is three-quarters of a mile wide. For a distance of approximately one-half a mile on the east side of the "wash" the area consists almost entirely of vacant and unimproved land. There are only four dwellings within a radius of two hundred yards from the crusher. As stated in the petition for the writ, the environment in the neighborhood of the stone crusher is made up of a "large area contained in a rugged, rocky and bushy wash, cut off from the rest of neighborhood by high bluffs." These bluffs range in height from fifty to one hundred feet and upward. In the neighborhood and closer to the populous part of the city are several railroads in operation, the Salt Lake operating daily ten trains, the Santa Fe twenty trains daily, and the Pacific Electric (an interurban line), operating a train every ten minutes. In the dry season the floor of the Arroyo Seco presents the appearance of a desert waste, here and there dotted with cacti and brush. In the rainy season torrential freshets occasionally spread over and cover the entire area. It contains large deposits of sand, gravel, and rock, which are very valuable for building purposes, particularly so because of the proximity of the market for building materials in the nearby cities. The rock consists of boulders of various sizes which are put through the crusher to reduce them to marketable form. The freshets which occur in the rainy season cause material to take the place of that removed in the dry season, making the supply of rock, sand, and gravel practically inexhaustible. Plaintiff's land has scarcely any value other than that due to the building material found thereon.

Before he applied for a writ of *habeas corpus,* the petitioner commenced an action in the superior court of Los Angeles County against the city of South Pasadena to enjoin the enforcement against him of the ordinance No. 264 and amendatory ordinances, on the ground of their alleged illegality. In that action the court adjudged the ordinances valid. By stipulation entered into between the petitioner and respondent the same evidence presented to the superior court upon the hearing of the application for the injunction is considered as evidence in this case. The findings of fact

and conclusions of law in the injunction proceeding are also before us as evidence but they are in no way binding upon this court and will be disregarded in view of the conclusion which we have reached concerning the invalidity of the ordinances. The chief justice of the court in company with counsel for the respective parties viewed the premises where the stone crusher is located, observed its operation at close range and at different points more or less remote from it. He also visited districts 1 and 2 and observed conditions in and about the same.

After a careful consideration of the evidence in the case we must hold that the ordinances under which the petitioner is being prosecuted in so far as they relate to the right to maintain and operate a stone crusher in district No. 3 are unreasonable and therefore void. In the injunction suit brought by the petitioner against South Pasadena, the petitioner introduced in evidence affidavits of nineteen witnesses, who testified to the conditions surrounding the stone crusher and resulting from its operation. Several of these witnesses testified that the noise and dust produced by the operation of the crusher were not observable at their places of residences. Among the witnesses, so testifying for the petitioner, were four dairy proprietors who conducted their dairies in the vicinity of the crusher, three at a distance of three hundred yards therefrom and one at a distance of four hundred and fifty yards. They all deposed that if the amount of dust claimed by the witnesses for the defendant to come from the crusher, emanated therefrom, they would notice it "as the dairy business would be especially sensitive to such an annoyance.". The other witnesses for the plaintiff living at distances varying from one hundred to three hundred yards from the crusher deposed that at their respective places of residence they noticed very little if any dust or noise.

As is usual in cases of this character there is a decided conflict in the testimony produced by the respective parties. The affidavits of eight witnesses were presented as evidence in favor of the defendant in the injunction suit. Six of these witnesses testified to the offensive character of the dust and the noise emanating from the crusher, while in operation; several of them joining in the statement that "the stone crusher maintained on plaintiff's property is injurious to the

health of the residents along the bank of the Arroyo Seco by reason of the noise and large amount of dust caused thereby and for like reasons is offensive to the senses of the residents and interferes with the use of property in the vicinity thereof and interferes with the comfortable enjoyment of life and property and is a nuisance." J. W. Moore, building inspector of South Pasadena, in his affidavit denied that Industrial District No. 2 is not suitable for or adapted to the existence or maintenance of businesses prohibited in district No. 3 as claimed by plaintiff. He declared "on the contrary said district (No. 2) is located in the vicinity of railroad tracks and *it is immediately surrounded by a poorer class of residences.* There are vacant lots in said industrial district on which manufacturing and industrial enterprises may be located." He further deposed that the crusher by its operation "creates noise and dust so as to seriously impair and destroy the value of lots in the city of South Pasadena along the bank of the Arroyo Seco and in the vicinity of said stone crusher."

Notwithstanding the evidence produced by respondent we deem the ordinances unreasonable and void. As already stated, the only district (No. 2) in which a stone crusher may be maintained contains 11.65 acres situated in the heart of the city and surrounded by residences and other buildings on all sides. While the ordinances permit the maintenance of a stone crusher in this restricted territory surrounded by residences the same ordinances make it a crime to erect or maintain one in a remote corner of the district No. 3 containing 2163 acres, a greater part of which is sparsely settled, or to maintain or erect one in the center of an area containing 500 acres in district No. 3 which is admittedly unimproved, undeveloped, and practically uninhabited. Although, as Inspector Moore in his affidavit says, district No. 2 where the business prohibited in No. 3 may be maintained is "immediately surrounded by a poorer class of residences" the occupants of these residences are entitled in law to as much consideration as those occupying the magnificent residences on the banks of the Arroyo Seco several hundred yards away from the objectionable crusher. The unreasonable restrictions as to the place where a stone crusher may or may not be erected or maintained render the ordinances void.

Concrete has become a very important factor in the construction of improvements in our cities and towns and in the construction of roads and highways. Rock, sand, gravel, and cement are necessary ingredients in concrete construction and must be obtained. The business of producing these materials, if maintainable within the confines of a city or county without becoming a public nuisance or offensive to the health, comfort, safety, or welfare of the inhabitants, cannot by legislative bodies be arbitrarily suppressed or interfered with.

The city of South Pasadena in the exercise of the police power vested in it by our state constitution has the undoubted right to regulate the business of operating a stone crusher within the city limits, but such ordinance must be reasonable and must be for the purpose of protecting the public health, comfort, safety, or welfare. As stated by the supreme court of the United States in *Dobbins* v. *Los Angeles,* 195 U. S. 223, [49 L. Ed. 169, 25 Sup. Ct. Rep. 18], "It may be admitted that every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety and that it is not the province of courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community. But notwithstanding this general rule of the law, it is now thoroughly well settled by decisions of this court that municipal by-laws and ordinances, and even legislative enactments undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the constitutional right to carry on a lawful business, to make contracts, or to use and enjoy property."

In the case now under consideration, it is plainly manifest that the attempted regulation of the business conducted by the petitioner has no relation to the ends for which the police power exists,—namely, to protect the public health, comfort, safety, or welfare. An ordinance which prevents the operation of a stone crusher in a sparsely settled territory of 2163

acres, five hundred of which are undeveloped and practically uninhabited and allows its operation in a small area of 11.65 acres in the center of a city surrounded by ''poorer classes of residences'' does not subserve the ends for which the police power exists.

The ordinances which the petitioner is charged with having violated being void and his arrest being illegal, it is ordered that he be discharged.

Lorigan, J., Sloss, J., Henshaw, J., and Melvin, J., concurred.