[L. A. No. 3609. Department Two.—March 6, 1916.]

GEORGE R. CURTIS, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

MUNICIPAL CORPORATIONS — DISCRIMINATORY ORDINANCE — ARBITRARY PROHIBITION OF STABLES IN RESTRICTED DISTRICT.—An ordinance of a municipality which absolutely prohibits the maintenance of stables within a small district of the city which was comparatively sparsely settled, while permitting their maintenance in other districts more thickly populated and densely settled and exclusively devoted to residence purposes, is oppressive, discriminatory, and void.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

George P. Adams, and Haas & Dunnigan, for Appellant.

Albert Lee Stephens, City Attorney, Charles S. Burnell, Assistant City Attorney, John W. Shenk, and George E. Cryer, for Respondents.

HENSHAW, J.—Plaintiff brought this action to enjoin the enforcement against himself of an ordinance of the city of Los Angeles prohibiting the establishment or maintenance of cattle or horse corrals within a certain district of the city (No. 26473, N. S.). Rejecting from consideration the charges in the complaint reflecting upon the motives of the legislative body of the city in adopting the ordinance, the facts undisputed, or found, are that the city of Los Angeles by its original ordinance (No. 24466, N. S.) divided a part of its territory into eight districts, declaring it to be unlawful for any person to conduct a feed-stable, livery-stable, or sales-stable within this territory, saving under permit from the health commissioner of the city. Plaintiff purchased a piece of property in the city of Los Angeles, outside of the boundaries of the eight districts delimited by the ordinance, for the purpose of erecting stable buildings and maintaining thereon a stable for mules. He did construct his stable and

housed and maintained therein twenty-four or twenty-six mules used by him in his business. The stable was so maintained in October, 1912. In November, 1912, the council of the city passed an ordinance (No. 26195, N. S.) amending the earlier ordinance by creating a new district, the boundaries of which surrounded plaintiff's stable. The condition then existing was that in the nine delimited districts such stables could be maintained under permit from the health officer of the city, and plaintiff made application for such permit. It was refused, for the reason that immediately following the passage of the amendatory ordinance in November another ordinance of the city was adopted in December, 1912 (No. 26473, N. S.), which declared it to be unlawful to establish, conduct, or maintain any such stable within the limits of district nine—the new district in which plaintiff's stable was situated. He continued to conduct his business, and being exposed to frequent arrests and prosecutions for violations of the ordinance, brought this action to secure an injunction, urging the unreasonable, oppressive, and discriminatory nature of the ordinance itself. As to the physical condition, plaintiff pleaded that there was a school building, which would not be completed for more than a year, situated more than five hundred feet from his barn; another situated more than seven hundred feet; a third more than a thousand feet; that the nearest hospital and the nearest public park are a quarter of a mile distant from the barn; that within the distance of a thousand feet upon one side of the stable there are but four residences, and upon the other side but seven, and that most of the territory is vacant, unoccupied property, and that the barn itself is situated a mile from the easterly limits of the city. Some of the denials to these allegations are quite inconclusive. Thus, there is no denial as to the number of residences, but there is a denial that any considerable portion of the territory in the immediate vicinity of the barn is vacant and unoccupied. The denial as to the distances of the schools is a denial merely "that said school is situated more than five hundred feet from the said barn," and as to the other school the denial is that "it is situated more than one thousand feet from said barn." There is no denial as to the distance of the park or hospital. The court's finding in this particular is that "most of the territory in the immediate vicinity of the barn of plaintiff is occupied

with private residences, except as otherwise admitted by the pleadings herein," and further that "there are several schools and hospitals in the immediate vicinity of said corral." But these findings are coupled with a declaration that such is the situation "except as otherwise admitted by the pleadings herein," and as we have seen that the pleadings admit the physical conditions alleged in the complaint, the findings are without efficacy to overthrow these admissions, even if it be thought that they were intended to do so. The court proceeded further to find that the district in which plaintiff's stable is situated "does not differ in density of population or physical characteristics or character of use from the eight districts created and described in Ordinance No. 24466 (N. S.), nor from districts one to nine described in Ordinance No. 26195 (N. S.), in which said districts so created it has been and is by the defendant made lawful to keep more than six horses in a single barn or stable upon obtaining a permit so to do and complying with certain sanitary regulations." And the court finds that "there is no apparent reason and no reason whatever in so far as respects the physical conditions, density of population, or character of use why the prohibition against horse corrals as defined in Ordinance No. 26473 (N. S.), might not have been extended to the said eight districts hereinabove referred to as described either in Ordinance No. 26195 (N. S.), or Ordinance No. 24466 (N. S.), nor why any different regulations as to the keeping of horses should be applied in the district described in Ordinance No. 26473 (N. S.), from that which the defendant city may see fit to apply to the said eight districts described in either Ordinance No. 24466 (N. S.), or 26195 (N. S.)." The court then proceeded to declare the number of permits granted for the keeping of such stables in the other districts, and it is shown that besides permits to individuals to keep horses for private purposes, fifty-one permits had been granted to maintain livery-stables, without limitation as to the number of animals kept therein, in the remaining eight districts, "and in portions of the city of Los Angeles more thickly populated or densely settled than the district described in Ordinance No. 26473 (N. S.), and which said districts are as exclusively devoted to residence purposes as the district described in Ordinance No. 26473 (N. S.)." Next the court found "that the stable as maintained is offensive to the residents in the

vicinity; that it is a source of offensive smells and odors which are perceptible for a distance of several hundred feet; that said stable and corral are breeding-places for flies; that the people in the immediate vicinity of said stable are annoyed and disturbed by the noises made and produced during the night-time and in the early morning hours by the mules kept by the plaintiff in his barn, and by the boisterous conduct of the laborers employed as teamsters by the plaintiff.'' But further the court found ''that the corral or stable of the plaintiff is kept in as sanitary, safe and careful a manner as it is reasonably practicable to keep said corral or stable in the absence of connection with the sewer in compliance with the other sanitary requirements mentioned in Ordinance No. 24466 (N. S.), and 26195 (N. S.). That it is kept in as careful, safe, and sanitary manner as livery-stables are ordinarily kept in the city of Los Angeles.'' And the court further finds ''that the sanitary condition of plaintiff's said corral or stable, that is, its tendency to attract or breed flies and the odor emanating from said stable, could be greatly improved by connecting the same with the sewer and by proper arrangements for the drainage into said sewers and otherwise complying with the sanitary requirements and regulations specified in said ordinance No. 24466 (N. S.), or said ordinance No. 26195 (N. S.).'' And the court further finds ''that the plaintiff is ready and willing to connect his said stable with the sewer, and to make proper arrangements for drainage into said sewer, and to comply with all the sanitary requirements and regulations specified and required by the city in the district where the keeping of more than four horses is permitted under the provisions of either of the said two ordinances last hereinbefore referred to.'' The obvious meaning of these findings is that the plaintiff, under the refusal of the health officer to grant the permit, is not allowed to improve the sanitary conditions of his stable, though willing and desirous so to do. The last finding of the court to the effect that the ordinance ''is not unreasonable nor is it an attempt to regulate in an improper manner the keeping of horses or mules in residence districts of the city of Los Angeles'' is plainly a conclusion of law and is based upon the opinion of the court—for the soundness of which respondent contends—that notwithstanding all the facts found, it was still within the power of the city of Los Angeles to forbid

this occupation within the inhibited district, and this is the vital consideration in the case.

In dealing with it one is embarrassed rather with the multiplicity than with the paucity of authorities, and it would be a waste of time to undertake a review of them. However, certain propositions applicable to this consideration merit brief statement. Plaintiff's business, while in and of itself legitimate and beneficial, is one of a class peculiarly the subject of police regulation. (*Ex parte Lacey,* 108 Cal. 326, [49 Am. St. Rep. 93, 38 L. R. A. 640, 41 Pac. 411].) And while the power to regulate a legitimate business does not contain as a part of itself the power to suppress (*In re Dart, ante,* p. 47, [155 Pac. 63]), yet it does contain within itself the power to prohibit within delimited areas and districts, if reason appears for so doing. (*Ex parte Hadacheck,* 165 Cal. 417, 420, [L. R. A. 1916B; 1248, 132 Pac. 584] ; *In re Wilson,* 32 Minn. 148, [19 N. W. 723].) Also, it may be noted, that when ordinances, such as the one here in question, are asserted to be unreasonable and oppressive upon the very face of the instrument, and without other evidence than the terms of the ordinance itself, courts have shown the utmost liberality and gone to great lengths in upholding such enactments if any substantial reason can be thought out in their justification. And very properly have the courts done this, because the power thus to regulate rests with the legislative branch of the government, and with its exercise the courts are naturally most reluctant to interfere, and do not interfere unless the case presents a clear invasion or denial of a legal right. But, upon the other hand, the courts have unhesitatingly overthrown such attempted exercises of the police power when no just ground for its particular form of exercise is shown, and where the result is undue oppression of the plaintiff or a confiscation in one form or another of his property. A few of the instances in which the courts have felt impelled to declare illegal such enactments will not be without value. In *Ex parte Bohen,* 115 Cal. 372, [36 L. R. A. 618, 47 Pac. 55], it was held that an ordinance which in effect permitted burials in lots owned; but prohibited the sale of other lots for burial purposes, was discriminatory and unreasonable, and therefore void in denying the privilege to one class, intending lot purchasers, while granting it to another, the owners of the cemetery lots. In *County of Los Angeles* v. *Hollywood Cemetery As-*

*sociation,* 124 Cal. 344, [71 Am. St. Rep. 75, 57 Pac. 153], an ordinance permitting burials, but prohibiting the establishment of new, or the enlargement of existing, cemeteries except under permit, was held unreasonable, amongst other grounds, because it limited the unrestricted privilege of burial to one class of citizens and denied it to another. In *In re Smith,* 143 Cal. 368, [77 Pac. 180], an ordinance prohibiting the maintenance of gasworks in a district found to be sparsely settled, the enforcement of which ordinance had the direct effect of stopping the operation of an existing gasworks, was held unreasonable and void. In the *Matter of the Application of Throop,* 169 Cal. 93, [145 Pac. 1029], an ordinance prohibiting the maintenance of a stone-crusher within a district containing more than two thousand acres, and sparsely settled, while it allowed the maintenance of such a crusher in another district, containing less than twelve acres situated in the heart of the city, was held to be unreasonable, discriminatory, oppressive and void. In *Dobbins* v. *Los Angeles,* 195 U. S. 223, [49 L. Ed. 169, 25 Sup. Ct. Rep. 18], a complaint similar to the one in the present case was filed, seeking to have declared void an ordinance of the city of Los Angeles. A general demurrer to this complaint was sustained by the trial court and its judgment in so doing affirmed by this court. Upon writ of error to the supreme court of the United States the judgment of this court was reversed upon the ground that the complaint, taking, of course, its pleaded facts as true, stated a cause of action meriting equitable relief. The facts were that by municipal ordinance limits were fixed within which gasworks might be erected. Thereafter a permit was granted for the erection of such a plant. Very shortly thereafter another ordinance was adopted under which, in the territory in which the gasworks were in course of erection, such works were prohibited. There had been no material change in the neighborhood or conditions. The supreme court of the United States held under this state of facts that this was an arbitrary and discriminatory exercise of the police power amounting to a taking of property without due process of law.

It is not, we think, debatable under the principle of these authorities, and under the findings made by the trial court, but that the ordinance here in question is also oppressive and discriminatory in creating a small district in which plaintiff has erected, and is maintaining, his stable, and prohibiting him

from longer maintaining it, while in other districts, "more thickly populated and densely settled and exclusively devoted to residence purposes," permits for the conduct of a like business are liberally granted.

The judgment appealed from is therefore reversed.

Melvin, J., and Lorigan, J., concurred.