[Civ. No. 15859.   Second·Dist., Div. Three.   Dec. 24, 1947.]

SAM BERNSTEIN, Appellant, v. HUBER E. SMUTZ, as Zoning Administrator, etc., Respondent.

Boone & Satchell for Appellant.

Ray L. Chesebro, City Attorney (Los Angeles), Bourke Jones, Assistant City Attorney, and Lester L. Lev, Deputy City Attorney, for Respondent.

VALLÉE, J. pro tem.—Appeal from a judgment rendered upon the sustaining of a demurrer to a petition for a writ of mandate. The order sustaining the demurrer gave petitioner leave to amend. He failed to do so within the time allowed. He appeals from the judgment which followed.

The facts alleged are these:

Respondent Smutz is Zoning Administrator of Los Angeles. On January 17, 1944, petitioner acquired oil leases on 5 acres of contiguous land in Los Angeles in what is known as the "Wilmington Oil Field." The 5 acres at all times have been "surrounded by public streets." Under his leases, petitioner is the owner of the exclusive right to drill for oil on the property and is obligated to drill three wells thereon. He drilled one producing well. On March 30, 1944, the city council of Los Angeles adopted Ordinance No. 88,392, amending the then existing zoning ordinance (Ordinance No. 77,000, as amended), to create "an oil drilling district" of the prop-

erty covered by petitioner's leases. The effect of this ordinance was to authorize the Zoning Administrator to grant variances "for the purpose of drilling for or producing oil, gas or other hydrocarbon substances" on the property covered by petitioner's leases, provided that "no variance shall be granted authorizing the drilling for oil or gas on any parcel of land in the City of Los Angeles which is less than one (1) net acre in area, and any such variance shall authorize only one well to be drilled to each acre." (Ord. 77,000, as amended, § 12.22(a)(9); § 12.13(a)(8)(B).)

On September 1, 1945, while the last mentioned ordinance was in force, petitioner applied to the Zoning Administrator for a variance for the purpose of drilling a second oil well on the leased property and complied with the necessary requisites in connection with such an application and the erection and maintenance of an oil well derrick, including payment of fees and posting of bond. It was the duty, it is alleged, of the Zoning Administrator under Ordinance No. 77,000, as amended, section 12.13(2)(8)(B), to grant petitioner a variance.

Four days later, on September 5, 1945, the city council adopted Ordinance No. 89,616, purporting to be an emergency measure, amending Ordinance No. 77,000, as amended. This ordinance was approved by the mayor the same day. Ordinance No. 89,616 prohibited the drilling, maintenance or operation of more than one oil well in any "city block" in the district in which petitioner's property is located, and contained a so-called "urgency" clause making it effective immediately. Ordinance No. 89,616 also prohibited the drilling or maintenance of more than one well in each "city block" in three other oil-well-drilling districts in the Wilmington Oil Field. The complaint does not disclose what areas were covered by these three districts except as they may be inferred from the notice of the Zoning Administrator next mentioned.

On September 20, 1945, the Zoning Administrator notified petitioner that his application had been dismissed "for lack of jurisdiction to grant a variance in the particular instance," and that the oil drilling district created by Ordinance No. 88,392 (the property covered by petitioner's leases only) "in common with all of the Oil Drilling Districts northerly of the Pacific Coast Highway between Frigate Ave. and Avalon Blvd. are limited by Ordinance No. 89616, approved September 5, 1945, among other things, contains the specific condition

as follows: 'In any City block in said district there shall not be located, drilled, maintained or operated more than one oil well.' There now exists in the southerly portion of the block in question a producing oil well known as Sam Bernstein Terminal No. 1. In view of the presence of this existing oil well and the provisions of paragraph 15 of Sub-section "a" Section 12.22 of the Los Angeles Municipal Code partially quoted above the Zoning Administrator is without authority to grant a variance permitting the drilling of an additional oil well in the block in question and request for Zone Variance is hereby *dismissed* for lack of jurisdiction.''

Ordinance No. 77,000, as amended, and in force at all times mentioned, defines a "block" thus: " 'Block' as used in this subsection shall mean that property entirely surrounded by public streets or by a public street or streets and a portion of the City Boundary Line and/or a portion of any subdivision tract boundary dividing subdivided land from unsubdivided acreage.''

Violation of the above mentioned ordinance is a misdemeanor. If petitioner should drill a second or subsequent well he will be subjected to criminal prosecution. The zoning ordinance as amended, and in particular Ordinance No. 89,616, is unreasonable, confiscatory, and oppressive as against petitioner, his property and his lessors and deprives him of valuable property rights without due process of law, deprives him of the equal protection of the law in violation of the constitutions of the United States and of California, is void and of no effect. The enforcement and threatened enforcement against him and his property is unlawful and without right or authority in law and constitutes an unlawful and unconstitutional invasion of his rights.

The portion of the Wilmington section of Los Angeles in all directions from petitioner's property has been drilled and developed and is producing oil, gas and other hydrocarbon substances in paying quantities. The oil field is known as "Wilmington Oil Field." (Maps of the Wilmington Oil Field are attached to the petition indicating oil wells heretofore drilled and now producing and indicating petitioner's property thereon.) Subsequent to the drilling of the discovery well in Wilmington, the city council of Los Angeles, by numerous and successive ordinances, established oil drilling districts extending from the boundaries of Wilmington on the

east, in a general northwesterly direction, through the harbor and industrial area, through the town and business section and the residential section, to the westerly boundary of Wilmington. Throughout the area comprising approximately 140 blocks, oil wells have been drilled, placed on production and are now producing. Throughout the area variances were granted, and in nearly all of the city blocks in the area two or more oil wells were drilled, variances being granted on the basis of one well to each acre of area and each city block contained several acres in area. By reason thereof, property owners in the area have received their proportionate share of oil and gas produced as royalties from two or more oil wells in each block and the lessee, in turn, has received production and revenue from two or more oil wells in each block. Petitioner's property, a city block in area, is only partially developed, the easterly one-half thereof being improved with small homes. The westerly one-half, fronting on Wilmington Boulevard, is zoned for business, most of that portion of the block being unimproved. The southerly portion has an oil and gasoline filling station on it. The area of petitioner's property and the area surrounding it have been included in oil well districts, oil wells have been drilled and are producing therein. All of said area is a part of the Wilmington Oil Field. Prior to the adoption of Ordinance No. 89,616, variances have been liberally granted by the zoning authorities of Los Angeles on the basis of one well to each acre of area and on the basis of several oil wells in each block throughout Wilmington and in business and residential areas of greater value, more densely populated and containing more improvements than the area in which petitioner's property is located. The area in which his property is located comprises a small section of Wilmington in which oil wells have been drilled and are producing. Immediately to the north of said section and within a few blocks of petitioner's property an oil tank farm and oil refinery are located and in operation. The oil wells drilled in the Wilmington Oil Field, described in the petition, overlie the same field and oil structure, and by reason of drainage therefrom, and unless petitioner is permitted to drill additional oil wells on the leased property, he and his lessors will suffer great loss and irreparable damage.

The petition prays for a writ of mandate directed against

the Zoning Administrator, commanding him to grant a variance permitting petitioner to drill an additional well on the property *or* to consider his application on the merits, in either case subject to the provisions of Ordinance No. 77,000, as amended, prior to the adoption of Ordinance No. 89,616.

The demurrer was general.

Petitioner contends that the complaint states facts sufficient to constitute a cause of action and to support the issuance of a writ of mandate.

The first question presented is whether the doctrine of exhaustion of administrative remedies is applicable on the facts. Respondent says that the petition does not state facts sufficient to support the issuance of mandate because there is no allegation that appellant appealed from the order of the Zoning Administrator.

The charter of the city of Los Angeles, section 99, empowers the Board of Zoning Appeals to hear and determine appeals where it is alleged there is error or abuse of discretion in any determination of the Zoning Administrator in the enforcement of any zoning ordinance or ordinance regulating the use of property, and to hear and determine appeals from determinations of the Zoning Administrator granting or denying applications for variances.

It is now definitely established that a party aggrieved by the application of an ordinance must invoke and exhaust the administrative remedies provided thereby before he may resort to the courts for relief. (*Metcalf* v. *County of Los Angeles,* 24 Cal.2d 267, 269 [148 P.2d 645] ; *Alexander* v. *State Personnel Board,* 22 Cal.2d 198 [137 P.2d 433]. The principle, by its terms, calls for the invocation and exhaustion of administrative remedies provided by the ordinance by which the party asserts that he is aggrieved. No administrative remedy was provided by the ordinance under attack. It specifically and definitely prohibited the drilling of more than one well within an area defined as a ''block.'' Neither the Zoning Administrator nor the Board of Zoning Appeals had any power or authority under the ordinance to grant a variance or exception. Petitioner, having drilled one well upon his property, before the adoption of the ordinance, could secure relief only by repeal or amendment of the ordinance or by resort to the courts. Neither the Zoning Administrator nor the Board of Zoning Appeals could give him

any relief whatever. In all of the cases in this state in which it has been held that a party had not exhausted his administrative remedies and therefore was not entitled to relief by the court, provision was made in the governing law for a proceeding of some nature before an administrative body which the party had not pursued. (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715]; *Metcalf* v. *County of Los Angeles,* 24 Cal.2d 267, 269 [148 P.2d 645], and cases cited therein.) It is only when no mode of attacking the validity of an ordinance is provided other than by resort to the courts, that a court will take jurisdiction. Where an ordinance contains provisions looking to the prevention of hardship upon owners in particular cases, resort to the administrative agency is required. We have not been cited to any case, and we have found none, holding that resort must be had to an administrative agency when the agency has no power to act. In a number of cases where an ordinance prohibited the doing of a particular act in a specific district, direct application to the courts for relief has been permitted and the ordinance held unconstitutional. Apparently in these cases there was no provision for a variance in the ordinance. The question whether an administrative remedy should have been exhausted was not urged or discussed. It seems clear, however, that it was not done because there was no administrative remedy to pursue. (See *Matter of Application of Throop,* 169 Cal. 93 [145 P. 1029]; *In re White,* 195 Cal. 516 [234 P. 396]; *Pacific P. Assn.* v. *Huntington Beach,* 196 Cal. 211 [237 P. 538, 40 A.L.R. 782]; *People* v. *Hawley,* 207 Cal. 395, 408 [279 P. 136]; *Wickham* v. *Becker,* 96 Cal.App. 443 [274 P. 397]; *Del Fanta* v. *Sherman,* 107 Cal.App. 746 [290 P. 1087].)

Neither the Zoning Administrator nor the Board of Zoning Appeals is a law-making body and neither has power to disregard or amend the ordinance under which it functions. (*Lee* v. *Board of Adjustments,* 226 N.C. 107 [37 S.E. 2d 128, 168 A.L.R. 1, 6]; *State ex rel. Tingley* v. *Gurda,* 209 Wis. 63 [243 N.W. 317]; *Gully* v. *Interstate Natural Gas Co.,* 82 F.2d 145, 147, cert. den. 298 U.S. 688 [56 S.Ct. 958, 80 L.Ed. 1407]; *Varney* v. *Warehime,* 147 Fed.2d 238, 243, cert. den. 325 U.S. 882 [65 S.Ct. 1575, 89 L.Ed. 1997].) The reasoning of *Ware* v. *Retirement Board,* 65 Cal.App.2d 781, 789 [151 P.2d 549], is applicable. That case was a pro-

ceeding in mandate to compel the Retirement Board of San Francisco to grant disability retirement benefits to the petitioner. The petitioner had made application to the board. The board had refused her a hearing. She did not apply for a rehearing. Relying on *Alexander* v. *State Personnel Board*, 22 Cal.2d 198 [137 P.2d 433], the city contended that mandate should not issue because the petitioner had not exhausted her administrative remedies. In an exceedingly well reasoned opinion by Mr. Presiding Justice Peters, the court held that the filing of a petition for a rehearing was "not an indispensable condition precedent to filing a petition for mandate to compel the Board to act." The court said that the rule of the Alexander case should not be extended to cases where no hearing at all has been granted by the board, the board simply refusing to act; that the board refused to grant the petitioner a hearing on the ground that she was barred as a matter of law; that where no hearing has been granted no petition for rehearing is required; that there was no "determination" of the board based on evidence, there was simply a ruling that, as a matter of law, the board did not act upon the petition because the applicant had no rights as a member of the retirement system; that nonaction is not the same as action. The Court of Civil Appeals of Texas, referring to the rule of exhaustion of administrative remedies in *James* v. *Consolidated Steel Corporation* (Tex. Civ. App.), 195 S.W.2d 955, 960, after stating the holding in *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715], said (p. 960): "But such rule does not bar a resort to the courts, if such administrative agency or commission refuses to act, acts illegally or arbitrarily, or beyond the scope of its authority."

*Metcalf* v. *County of Los Angeles*, 24 Cal.2d 267 [148 P.2d 645], upon which respondent counts heavily, is not analogous. As the court there repeatedly said, the ordinance authorized the zoning authorities to grant an exception or variance. Therefore, as the remedy had not been exhausted the court would not take jurisdiction. Here, the ordinance does not authorize the Zoning Administrator or the Board of Zoning Appeals to grant an exception or variance. It definitely and specifically prohibits the drilling of more than one oil well to a city "block." The Board of Zoning Appeals is without power to amend the ordinance or to ignore it altogether or

to accomplish its repeal. As there was no administrative remedy available to appellant, the contention of respondent in that regard cannot be sustained.

█ Appellant contends that the petition alleges facts sufficient to entitle him to make proof that the ordinance is unconstitutional. We think it does. It is always open to interested parties to contend that the legislative body has gone beyond its constitutional power. The question is whether the police power can be stretched as far as was done in this case. In *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393 [43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321, 1324], Justice Holmes said (p. 1325): "The protection of private property in the 5th Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the 14th Amendment. *Hairston* v. *Danville & W. R. Co.,* 208 U.S. 598, 605 [28 S.Ct. 331, 52 L.Ed. 637, 639, 13 Ann.Cas. 1008]. When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States."

In *Matter of Application of Throop,* 169 Cal. 93 [145 P. 1029], it was said (p. 99): "As stated by the supreme court of the United States in *Dobbins* v. *Los Angeles,* 195 U.S. 223, [49 L.Ed. 169, 25 S.Ct. 18], '. . . it is now thoroughly well settled by decisions by this court that municipal by-laws and ordinances, and even legislative enactments undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the constitutional right to carry on a lawful business, to make contracts, or to use and enjoy property.' " To the same effect, *People* v. *Hawley,* 207 Cal. 395, 410, 411 [279 P. 136]; *Del Fanta* v. *Sherman,* 107 Cal.App. 746, 749 [290 P. 1087]; *Bank of America* v. *Town of Atherton,* 60 Cal. App.2d 268, 273 [140 P.2d 678]; *American Paint Co.* v. *Mc-Cune,* 67 Cal.App.2d 583, 585 [155 P.2d 123]. The court in *Miller* v. *Board of Public Works,* 195 Cal. 477, 489 [234 P.

381, 38 A.L.R. 1479], made these pertinent observations: "It cannot be gainsaid, however, that many municipalities, evidently upon the theory that zoning is a panacea for civic ills, have, under the guise of zoning, sought to enact and enforce unreasonable and discriminatory ordinances. Some of these attempted regulations have been palpably for the exclusive and preferential benefit of particular localities. The duty, therefore, devolves upon the courts to determine in each instance whether or not the ordinance, either in whole or in part, is invalid.''

In *Del Fanta* v. *Sherman*, 107 Cal.App. 746 [290 P. 1087], the question before us is asked and answered as follows (p. 749): "May a city deprive one of valuable property rights in an oil lease by enacting a zoning ordinance which prohibits him from sinking wells within specified residence districts, regardless of the population or conditions therein contained? This depends upon whether the ordinance is uniform and reasonable. . . . Assuming that the residence portion of a city may be so densely populated or the business portion so adapted as to warrant the adoption of an ordinance prohibiting the use of a motor engine therein, having a capacity of more than five horsepower, it became a question of fact to be determined by evidence in the present case as to whether the population or conditions surrounding the use of the respondents' property would warrant the enforcing of such an ordinance. The motion for judgment on the pleadings was, therefore, erroneously granted. As was said in the Pacific P. Assn. Case, *supra* [196 Cal. 211], in which the judgment was reversed for similar reasons: 'Appellant should be accorded the opportunity to establish, if it can, the unreasonableness and discriminatory character of the ordinance which it alleges amounts to an unwarranted and arbitrary interference with its constitutional rights.' ''

*Pacific P. Assn.* v. *Huntington Beach*, 196 Cal. 211 [237 P. 538, 40 A.L.R. 782], is controlling. In that case the complaint sought to enjoin the enforcement of a zoning ordinance which prohibited the drilling of an oil well in a business or residence district as described in the ordinance. The plaintiff's property was within a residence district. In asserting the unconstitutionality of the ordinance as applied to his property the plaintiff alleged facts no stronger, if as strong, than those alleged in the petition here. There, as here, a demurrer was

sustained. Plaintiff did not amend and judgment for defendant followed. The court held (p. 216) : "We are of the opinion that the appellant has stated a cause of action. The business of boring for and producing oil is a lawful enterprise. The effect of the ordinance, absolutely prohibiting the maintenance or operation of oil wells within certain designated limits of the City of Huntington Beach, is to deprive the owners of real property within such limits of a valuable right incident to their ownership. While the use to which one may put his property may be restricted or regulated by the state, in the exercise of its police power, so far as it may be necessary to protect others from injury from such use, it is elementary that the enjoyment of the property cannot be interfered with or limited arbitrarily. (*In re Kelso,* 147 Cal. 609, 611 [109 Am.St.Rep. 178, 2 L.R.A.N.S. 796, 82 P. 241].)

█ It must be taken as very definitely settled in this state that the right to zone may be resorted to by municipalities upon a proper invocation of the police power. (*Miller* v. *Board of Public Works,* 195 Cal. 477 [38 A.L.R. 1479, 234 P. 381] ; *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 P. 388].) But such zoning must be reasonably necessary and reasonably related to the health, safety, morals, or general welfare of the community. █ A municipality is not permitted, under the guise of regulating business and segregating it to a particular district, to grant a monopoly to business establishments and enterprises already situated in unrestricted districts. (*In re White,* 195 Cal. 516 [234 P. 396].) . . . It is apparent from the averments of the complaint that appellant has attempted to plead a situation analogous to those considered in the two decisions of this court last cited. It has been fairly successful, and presents a case in which a property owner is prohibited by the municipality from installing machinery and operating an oil well on its property, while in other districts of the city, more thickly populated and densely settled, and devoted to residence purposes, the conduct of like operations is permitted. (*In re Application of Throop, supra* [169 Cal. 93 (145 P. 1029)], and *Curtis* v. *Los Angeles, supra* [172 Cal. 230 (156 P. 462)].) For these reasons, appellant should be accorded the opportunity to establish, if it can, the unreasonableness and discriminatory character of the ordinance, which it alleges amounts to an unwarranted and arbitrary interference with its constitutional rights. The outcome of the controversy will, of course,

depend upon the findings of the trial court when the issues have been finally submitted and determined. The demurrer should have been overruled."

The Huntington Beach case was followed in the late case of *Bernstein* v. *Bush*, 29 Cal.2d 773 [177 P.2d 913], where it was contended that provisions of the Public Resources Code, relating to the spacing of oil wells, violated provisions of the United States and California Constitutions, the court saying (p. 777) "The present legislation, however, is not in that category. [Instances where the necessary result of the legislation is *damnum absque injuria*.] It contemplates that oil and gas wells will be drilled on the private property overlying the source of supply, and assumes to regulate the spacing of the wells thereon in the interests of the public safety and the conservation of natural resources. The face of the legislation may appear to be valid, and insofar as it can be complied with and applied without a denial of constitutional rights it will be held to be proper and lawful legislation. But a statute, innocuous and valid on its face, may become invalid in its application, in which event it is proper for the petitioner to show the facts by which he contends that as to him the law is unreasonable, oppressive and void. (*In re Smith*, 143 Cal. 368, 370 [77 P. 180].) In that case, at page 371, it was said that when the police power is exerted to regulate a useful business or occupation, the Legislature is not the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue the business or occupation; that it is always a judicial question whether the particular regulation of the right is a valid exercise of the police power, although the authority of the courts to declare a regulation invalid will be exercised with caution and only when it is clear that the law exceeds the limits of legislative power and infringes upon rights guaranteed by the Constitution. (See, also, *Dobbins* v. *Los Angeles*, 195 U.S. 223, 237 [25 S.Ct. 18, 49 L.Ed. 169].) In *Skalko* v. *City of Sunnyvale*, 14 Cal.2d 213, 216 [93 P.2d 93], this court recognized that a police regulation, valid when adopted, might become invalid in its operation in particular instances. The same principle was stated in *Bandini Petroleum Co.* v. *Superior Court*, 284 U.S. 8, 22 [52 S.Ct. 103, 76 L.Ed. 136], where the Supreme Court upheld a California statute regulating the exercise of the correlative rights of surface owners with respect to a common source of supply of oil and gas as 'valid upon

its face, that is, considered apart from any attempted application of it in administration which might violate constitutional right. . . .'

"Here then we are more directly concerned with the contention of the petitioners that in its application to them the statute is discriminatory and therefore unconstitutional. They assert that such discrimination results from the fact that the enforcement of the regulations permits some owners of lands overlying the oil basin to exercise and enjoy their property right to take oil from the field, while the petitioners, who are property owners overlying the same oil supply are deprived of the use and enjoyment of their coequal right. The mere assertion of the problem suggests the answer.

"Under the law of this state the landowner has a property right in oil and gas beneath the surface, not in the nature of an absolute title to the oil and gas in place, but as an exclusive right to drill upon his property for these substances. His unqualified and absolute title attaches after the substances have been reduced to possession. (*Tanner* v. *Title Ins. & Trust Co.,* 20 Cal.2d 814, 819 [129 P.2d 383] ; *Bandini Petroleum Co.* v. *Superior Court, supra,* 110 Cal.App. 123, 127 [293 P. 899].) This is a right which is 'as much entitled to protection as the property itself, and the undue restriction of the use thereof is as much a taking "for constitutional purposes as appropriating or destroying it." ' (*People* v. *Associated Oil Co., supra,* 211 Cal. [93 (294 P. 717)] at pp. 99-100 and cases cited.)

"In *Ohio Oil Co.* v. *Indiana,* 177 U.S. 190, at 209 [20 S.Ct. 576, 44 L.Ed. 729], involving an oil and gas conservation measure, the Supreme Court said that all (not some) of the surface proprietors within an oil and gas field have the right to reduce to possession the oil and gas beneath the surface, and that they could not be absolutely deprived of that right without a taking of private property. The court went on to consider the owners' coequal right to take from the common source of supply, observing that one owner should not be permitted to convert an undue proportion of the supply to the detriment of others; hence that from the peculiar nature of the property right, the legislative power might be exerted in the protection of all the collective owners by securing a just distribution among them. Thus the Supreme Court held that a statute designed to protect life and property or

prevent waste, or both, must apply without discriminating against the coequal rights of the property owners; also that a police regulation otherwise reasonable which was designed to secure to each a just distribution from the common source of the supply of oil and gas, took proper cognizance of the property owners' rights. (See, also, *Gulf Land Co.* v. *Atlantic Refining Co.*, 134 Tex. 59 [131 S.W.2d 73].) In the latter case it was said that the denial to one surface owner of his fair chance to recover in kind the oil and gas beneath the surface, or its equivalent, would be a confiscation of his property." The court then discusses *Railroad Commission* v. *Magnolia Petroleum Co.*, (Court of Civil Appeals of Texas) 169 S.W.2d 253 and *Marrs* v. *Railroad Commission*, 142 Tex. 293 [177 S.W.2d 941], where similar conclusions were reached on like reasoning, and continued (p. 780) : "In the absence of statutory prohibition, the right to drill an offset well was commonly resorted to as a means of protection by an owner whose property was being drained by a well drilled on adjoining land. The wasteful use of offset wells was recognized as one of the evils sought to be minimized by the enactment of well spacing regulations. (*Croxton* v. *State*, 186 Okla. 249 [97 P.2d 11, 19] ; *Brown* v. *Humble Oil & Refining Co.*, 126 Tex. 296 [83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107].) But since the mere opportunity for voluntary pooling of interests does not afford equal protection within the meaning of the federal and state Constitutions, regulatory provisions which in effect prohibit the drilling of offset wells may amount to a denial of the equal protection of the law and a taking of private property without due process of law. Equal protection is so denied where, as here, the law, in its application at least, does not afford adequate means of protection as a substitute for the right to drill an offset well."

█ Neither does the ordinance here "afford adequate means of protection as a substitute for the right to drill an offset well." As in the Bush case, so here, under the facts alleged, the ordinance attacked amounts to a deprivation of petitioner's right, coequal with the right of surrounding owners and lessees, to recover his fair share of the oil and gas from the common source of supply and, consequently, infringes upon the constitutional guarantees invoked. The discriminatory effect of the ordinance lies in its singling out for regulation a small area and imposing upon owners and lessees therein restrictions not applicable to other areas in the

Wilmington Oil Field having, in many instances as shown by the maps attached to the petition, similar or even identical conditions. (*Reynolds* v. *Barrett*, 12 Cal.2d 244 [83 P.2d 29]; *Covington* v. *Summe & R. Co.*, 210 Ky. 520 [276 S.W. 534].)

The ordinance under consideration, as we have stated, defines a "block" as property entirely surrounded by public streets. An inspection of the maps attached to the petition discloses that the "blocks" surrounded by public streets in the Wilmington Oil Field consist of areas of varying sizes. Appellant's "block" consists of 5 acres. Many "blocks" appear to consist of much less acreage. Appellant has a right to have the court hear evidence and determine whether this feature of the ordinance renders it unreasonable, arbitrary and discriminatory and, therefore, unconstitutional. (See *Romar Realty Co.* v. *Board of Com'rs*, 96 N.J.L. 117 [114 A. 248]; *Bjork* v. *Safford*, 333 Ill. 355 [164 N.E. 699, 61 A.L.R. 561].)

*Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332 [175 P.2d 542], relied upon by respondent, is distinguishable on its facts. In that case, as the court stated (p. 342), the plaintiff "does not occupy the position of one whose property is unduly restricted as to use in comparison with the surrounding territory." The allegations of the petition here are to the effect that petitioner does occupy the position of one whose property is unduly restricted as to use in comparison with the surrounding territory. In the Wilkins case the court said (p. 338): "A city cannot unfairly discriminate against a particular parcel of land, and the courts may properly inquire as to whether the scheme of classification has been applied fairly and impartially in each instance. (*Reynolds* v. *Barrett*, 12 Cal.2d 244, 251 [83 P.2d 29].) . . . An examination of the California decisions discloses that the cases in which zoning ordinances have been held invalid and unreasonable as applied to particular property fall roughly into four categories: 1. Where the zoning ordinance attempts to exclude and prohibit existing and established uses or businesses that are not nuisances. [Citing cases.] 2. Where the restrictions create a monopoly. [Citing cases.] 3. Where the use of adjacent property renders the land entirely unsuited to or unusable for the only purpose permitted by the ordinance. [Citing case.] 4. Where a small parcel is restricted and given less rights than the surrounding property,

as where a lot in the center of a business or commercial district is limited to use for residential purposes, thereby creating an 'island' in the middle of a larger area devoted to other uses. [Citing cases.]'' The allegations of the petition bring the present case within the first and second categories, and perhaps within the third category.

Many city blocks in the Wilmington Oil Field have more than one well to the block. Immediately across the street to the south of petitioner's property there are two wells in the block, one of them near the north line. Under the allegations of the petitioner he will have the right to prove and may prove that these and other wells are draining from below his property. He will also have the right to prove that the total production from a single well would be substantially less than the amount which would be recoverable if one or more additional wells should be drilled. The ordinance, in effect, grants a monopoly to owners and lessees having more than one well to a city block in the Field, especially where drainage from other property may take place. If the allegations of the petition are true (they must be assumed to be true on this appeal), it appears that Ordinance No. 89,616 has no relation to the ends for which the police power exists—to protect the public health, safety, morals or welfare.

In this connection it is a significant fact that at the time this emergency ordinance was adopted petitioner has an application pending with the Zoning Administrator. Petitioner made application to the Zoning Administrator on September 1, 1945. The amending ordinance was adopted by the Council and signed by the Mayor on September 5, 1945. In *Vine* v. *Zabriskie*, 122 N.J.L. 4 [3 A.2d 886], it was held that where property was zoned for local business and apartment uses, an amendment to the zoning ordinance hastily adopted by the city commissioners after the owner had applied for a permit for the erection of apartment houses thereon, prohibiting the use of the property for that purpose, was an arbitrary interference with the lawful and legitimate use of private property. (Cf. *Dubow* v. *Ross*, 175 Misc. 219 [22 N.Y.S.2d 610].) It would appear from the record before us that the emergency seems to have been petitioner's pending application.

Petitioner is entitled to prove, as he alleges, the absence of a reasonable relationship with a substantial or definite public purpose in the imposition inherent in the prohibitive

ordinance considered in the light of the result to him.  Valid issues of fact are tendered.  Whether only one well to a block in the area in question is reasonable is not something of which the courts may take judicial notice.  The only way in which the validity of the ordinance can be determined is by a trial of the issues of fact tendered by the petition.

Judgment reversed.

Shinn, Acting P. J., and Wood, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 19, 1948.